

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0738-10

**LAVONNE BYRD, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

**COCHRAN, J., delivered the unanimous opinion of the Court.**

O P I N I O N

In this theft case, the State alleged that appellant appropriated certain property from the owner, "Mike Morales." At trial, the State proved that Wal-Mart owned the property. Mike Morales was never mentioned. The jury charge tracked the allegations in the information, and the jury returned a verdict finding appellant guilty of theft of property from Mike Morales. Appellant claimed on appeal that the evidence was legally insufficient to support her conviction because the State had alleged the wrong owner. A sharply divided

*en banc* court of appeals held that the discrepancy between the alleged owner and the proof at trial was an immaterial variance.[1] The three dissenting justices argued that this was an instance of the failure of proof and that appellant was entitled to an acquittal.[2] We granted appellant's petition to resolve this difficult issue.[3] We conclude that, under the principles set out in our trilogy of *Malik*, *Gollihar*, and *Fuller*,[4] the State failed to prove its allegation that Mike Morales was the owner of the property appellant stole. Thus, the evidence is insufficient to support her conviction.

## I.

Appellant was charged with misdemeanor theft for shoplifting. The information read, in pertinent part: "Lavonne Byrd, hereinafter referred to as defendant, with intent to deprive the owner, Mike Morales, of property namely, three (3) pairs of pants and one (1) DVD, did unlawfully, without the effective consent of the owner, appropriate said property[.]" At trial,

---

[1] *Byrd v. State*, 319 S.W.3d 102 (Tex. App.–San Antonio 2010).

[2] *Id.* at 112.

[3] Appellant's two grounds for review are as follows:
1.  The court of appeals erred in holding that the property owner's identity is not a substantive element of the offense of theft under federal constitutional law, because no rational trier of fact could have found the substantive elements of the offense beyond a reasonable doubt without proof of identity of the owner named in the charging instrument.
2.  The court of appeals erred in holding that the property owner's identity is not a substantive element of the offense of theft under state law, because the identity of the owner was required in a hypothetically correct jury charge in a theft case.

[4] *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997); *Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001); *Fuller v. State*, 73 S.W.3d 250 (Tex. Crim. App. 2002).

the State called Richard Salinas, one of Wal-Mart's loss prevention officers. He watched appellant as her two female cohorts scooped up items–primarily children's clothing, cosmetics, and jewelry–from different departments in the store. They then passed those items to appellant to hide underneath a blanket covering a baby's car seat propped up in a shopping cart. Mr. Salinas and another Wal-Mart loss prevention officer, Leo Padron, attempted to stop all three women after they left the store without paying for the items. Appellant was carrying the car seat. When Mr. Padron stopped appellant right outside the store, she said "Here, you can have your stuff back," and she emptied out all of the merchandise that had been hidden in the car seat. The two other women fled. The total value of the forty-three items that were hidden underneath the blanket was $306.61. Mr. Salinas testified that "Wal-Mart hadn't given her consent to take that property."

The jury charge tracked the information, including the allegation that the owner of the property was "Mike Morales." The jury found appellant guilty of theft and the trial judge sentenced her to six months in jail, but probated the sentence for one year.

At no time during the trial did anyone ever refer to a "Mike Morales." And no witness ever made any connection between a "Mike Morales" and Wal-Mart or any of the property that appellant shoplifted. No one–not the prosecutor, the defense counsel, the trial judge, or even the jury–seemed to notice this astonishing discrepancy between the allegation of "Mike Morales" as the owner of the property in both the information and the jury charge and

the absence of any mention of him or his possible connection to the property at trial.[5]

On appeal, appellant argued that the evidence was legally insufficient under *Jackson v. Virginia*[6] when measured by the elements of the offense as defined in the hypothetically correct jury charge required by *Malik v. State*.[7] The *en banc* Fourth Court of Appeals, in a four-to-three decision, held that the variance between the information and jury charge allegation that "Mike Morales" was the owner of the property and proof that "Wal-Mart" was the owner of the property was not material. Therefore the evidence was legally sufficient to support appellant's conviction.[8] The majority stated that "the name of the owner is not a substantive or statutory element of the offense of theft," and therefore "the allegation of the name of the owner of the property is not required to be included in a hypothetically correct jury charge."[9] It affirmed appellant's conviction.

The three dissenters, on the other hand, argued that this discrepancy between the ownership allegation and the evidence was an instance of "a failure of proof rather than a variance," but that, even if it was a variance issue, it was a material variance under *Fuller v.*

---

[5] On appeal, the State noted that the name "Mike Morales" appears in the police offense report that was marked and used to refresh witnesses' memories, but was never offered into evidence at trial. In this report, Mr. Morales was listed as the manager of the Wal-Mart store.

[6] 443 U.S. 307 (1979).

[7] 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[8] *Byrd v. State*, 319 S.W.3d 102, 111-12 (Tex. App.–San Antonio 2010).

[9] *Id.*

*State*[10] and *Bailey v. State*.[11]  The dissent would reverse appellant's conviction and enter an acquittal.

Both the majority and dissenting opinions did an admirable job of thoroughly addressing the issue, but they cannot both be right.  We granted discretionary review in an attempt to clarify this difficult and still confusing area of the law.

II

**A.     Legal Sufficiency, Federal Due Process, and State Law.**

In *Jackson v. Virginia*, the Supreme Court held that federal due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged.[12]  The Due Process Clause protects a person from conviction "'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[13] But the Court also stated that this constitutional standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."[14]  Thus, the "elements" or "facts necessary" to constitute a particular crime are determined by state law. Under Texas state law, we measure the sufficiency of the evidence "by the elements of the

---

[10] 73 S.W.3d 250 (Tex. Crim. App. 2002).

[11] 87 S.W.3d 122 (Tex. Crim. App. 2002).

[12] *Jackson*, 443 U.S. at 316.

[13] *Id.* at 315 (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).

[14] *Id.* at 324 n.16.

offense as defined by the hypothetically correct jury charge for the case."[15]   Such a charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[16]   Thus, we apply the *Jackson* standard of review to the hypothetically correct jury charge.[17]   But sometimes the words in the indictment do not perfectly match the proof at trial.

*1.    Variances.*

A "variance" occurs whenever there is a discrepancy between the allegations in the indictment and the proof offered at trial.[18]   Variances are mistakes of one sort or another. Sometimes they make no difference at all, sometimes they make all the difference. Suppose, for example, the indictment alleges that the defendant killed Dangerous Dan McGrew.  At trial, the State proves that the defendant killed Little Nell, not Dangerous Dan.  That is a big mistake.  Murder may be murder, but killing one person is not the same offense as killing an entirely different person.[19]   In such a case, the State has failed to prove its allegation that the

---

[15] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[16] *Id.*

[17] *Id.*; *see also Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001).

[18] *Gollihar*, 46 S.W.3d at 246 (citing 42 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 31.81 at 178 (1995)).

[19] *See The Hoppet v. United States*, 11 U.S. 389, 394 (1812) (Marshall, C.J.) ("The rule that a man shall not be charged with one crime and convicted of another, may sometimes cover

defendant killed Dangerous Dan McGrew, and the defendant is entitled to an acquittal under both *Jackson* and *Malik*.[20]   Of course he may be reindicted and tried for the murder of Little Nell, as he was never placed in jeopardy for killing her.[21]   A variance of this type is actually

real guilt, but its observance is essential to the preservation of innocence.  It is only a modification of this rule, that the accusation on which the prosecution is founded, should state the crime which is to be proved and state such a crime as will justify the judgment to be pronounced."); *see also Dunn v. United States*, 442 U.S. 100, 105 (1979) ("A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment"; defendant could not be convicted in prosecution for making false statements to grand jury, when government alleged that defendant made an inconsistent statement at a September 30 interview–which was not an "ancillary proceeding"–but proved that he made inconsistent statements at an October preliminary hearing–which did qualify as an "ancillary hearing"; Supreme Court reversed the circuit court which had held that this was "a nonprejudicial variance between the indictment and proof at trial"); *Stirone v. United States*, 361 U.S. 212, 217 (1960) (indictment charged a violation of Hobbs Act by interfering with interstate shipments of sand into Pennsylvania; evidence and jury instructions would have allowed conviction for interfering with shipments of steel from Pennsylvania into other states; this variance created a substantial likelihood that defendant may have been convicted of a charge not contained in the indictment).

     [20] *Gollihar*, 46 S.W.3d at 254-56 (discussing post-*Malik* decisions and stating that "we have interpreted *Malik* to control sufficiency of the evidence analysis *even in the absence of alleged jury charge error*"; noting that hypothetically correct jury charge in a kidnapping case must include the victim's name, not merely the statutory term "another" and sufficiency of the evidence is reviewed as to proof that the named victim was abducted).

     [21] *See Bailey v. State*, 87 S.W.3d 122, 126-28 (Tex. Crim. App. 2002) (defendants' acquittal for theft from City of Houston did not bar reprosecution for theft of same property from "Rick Collins" because thefts from different persons or entities were not the "same offense"; collecting and discussing Texas cases for the proposition that "if the name of the injured party in the two indictments or information is not the same, the plea of former acquittal is ordinarily bad on its face."); *Fuller v. State*, 73 S.W.3d 250, 256-57 (Tex. Crim. App. 2002) (Keller, P.J., concurring) (discussing non-statutory facts defining allowable units of prosecution and giving the example of a defendant who is indicted for murdering Mary, but proven to have  murdered John; in such a case, "protecting the defendant's double jeopardy rights requires acquitting the defendant of the murder of Mary.  After such an acquittal, the State could seek an indictment alleging the murder of John."); *see generally*, 43 DIX & DAWSON, *supra* note 18, § 31.233 at 152-56 (stating traditional Texas rule that double-jeopardy principles do not bar reprosecution when defendant is acquitted on the basis of a variance between the pleading and proof at trial and noting that the case law "has generally involved variance acquittals based on . . . name

a failure of proof because the indictment sets out one distinct offense, but the proof shows an entirely different offense.

Now suppose that the State proves that the defendant killed Dan McGrew, but every witness agreed that Dan was not at all dangerous and had never been called Dangerous. Or suppose that the evidence showed that the murder victim was really Don McGrew, Daniel Macgrew, or Dan Magoo. These are all examples of variances between the allegation and the proof, but they are little mistakes, generally not likely to prejudice a defendant's substantial rights by either (1) failing to give him notice of who it was he allegedly killed, or (2) allowing a second murder prosecution for killing the same person with a different spelling of his name.[22] Little mistakes or variances that do not prejudice a defendant's substantial rights are immaterial.[23] On the other hand, a conviction that contains a material

---

differences.").

[22] *See Berger v. United States*, 295 U.S. 78, 82 (1935) ("The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense."); *Bennett v. United States*, 227 U.S. 333, 338 (1913) (variance between White Slave Act indictment allegation that defendant transported woman named "Opal Clarke" and proof that she was known as "Opal" and "Nellie" but that her true name was Jeannette Laplante" was immaterial variance because the defendant knew the victim as "Opal Clarke").

[23] *See Bennett*, 227 U.S. at 338; *Gollihar v. State*, 46 S.W.3d 243, 257 n.23 (Tex. Crim. App. 2001) (stating that immaterial variance rule had existed in Texas as far back as 1911; "'A variance is not now regarded as material unless it is such as might mislead the defense, or might expose the accused to the danger of being put twice in jeopardy for the same offense.'") (quoting *Feeny v. State*, 138 S.W. 135, 138 (Tex. Crim. App. 1911) (op. on reh'g)).

variance that fails to give the defendant sufficient notice or would not bar a second prosecution for the same murder requires reversal, even when the evidence is otherwise legally sufficient to support the conviction.[24]

2.     *Legal sufficiency and variances.*

In *Gollihar v. State,*[25] we held that, under state law, the hypothetically correct jury charge–the standard by which to measure sufficiency of evidence under *Jackson*–need not incorporate allegations that give rise to immaterial variances.[26]  And in *Fuller v. State*, we held that, under state law, immaterial variances are to be disregarded in reviewing the sufficiency of the evidence.[27]  In *Fuller*, for example, the discrepancy between the indictment

---

[24] *See Fuller*, 73 S.W.3d at 253 n.2.

[25] 46 S.W.3d 243 (Tex. Crim. App. 2001).

[26] *Id.* at 258 ("in light of the principles underlying *Malik* . . . a hypothetically correct charge need not incorporate allegations that give rise to immaterial variances.").  We recently discussed *Gollihar* in *Cada v. State*, ___ S.W.3d ___, No. PD-0754-10, 2011 WL 409002 (Tex. Crim. App. 2011), in which we explained,

> In *Gollihar,* the indictment for theft of a go-cart stated that the go-cart was "Model 136202," but the State's evidence showed that its model was 136203. That variance was immaterial because the State did not have to plead any model or serial number to describe the property stolen and there was no suggestion that the defendant was surprised or harmed by the evidence offered at trial.  The model number was not an element of the offense, and the defendant's guilt or innocence of the theft charge did not depend upon the specific model of the go-cart. Further, there was no suggestion that the defendant possessed numerous go-carts with different model numbers, or that he was misled about which specific go-cart the State would prove he stole.

*Id.* at *5.

[27] *Fuller*, 73 S.W.3d at 254 ("In this case, the prosecution's failure to prove the victim's name exactly as alleged in the indictment does not make the evidence insufficient under *Gollihar*.").

allegation that the victim of injury to an elderly person was named "Olen M. Fuller" and the evidence that he was called "Mr. Fuller" or "Buddy" was an immaterial variance which did not make the evidence insufficient under *Malik* or *Gollihar*.[28]

Taken together, *Malik, Gollihar,* and *Fuller* brought Texas law into the mainstream of modern American variance law and sufficiency of the evidence standards. Under traditional Texas variance doctrine, this Court routinely reversed convictions when the name of the person alleged in the indictment did not exactly match the proof of that person's name at trial. For example, in *Escobar v. State,*[29] this Court held that there was a fatal variance between the allegation in the burglary indictment that the complainant's name was Dan Wiederhold, when the evidence showed that this person was really named Donald Ray Wiederhold.[30] The conviction was reversed and the defendant acquitted, but we explicitly stated that double jeopardy would not bar retrial under a new indictment alleging the complainant as Donald Ray Wiederhold.[31] Similarly, in *Fulmer v. State,*[32] we noted *Escobar* and held that double jeopardy did not bar reprosecution under a new indictment alleging "Kim Ngo" when the defendant was originally acquitted of the aggravated sexual assault of

---

[28] *Id.*

[29] 578 S.W.2d 139 (Tex. Crim. App. 1979).

[30] *Id.* at 140.

[31] *Id.* at 140 n.1.

[32] 731 S.W.2d 943 (Tex. Crim. App. 1987).

"Kim Nguyet," but the evidence showed that her name really was "Kim Ngo."[33]

Thus, under prior law, when there was a slight variance between a person's name as alleged and as proved at trial, the defendant was entitled to an acquittal under that charging instrument, but could be retried under a more perfect pleading.[34] Although some cases had held that a minor variance was "immaterial" and thus did not make the evidence insufficient,[35] the only recognized exception to the "fatal variance" rule was the doctrine of

---

[33] *Id.* at 946.

[34] *See also Pitt v. State*, 362 S.W.2d 117, 117 (Tex. Crim. App. 1962) (fatal variance when the information alleged that the worthless check was given to "Sue Simpson," but the proof showed that this person was really named "Reva Sue Simpkins"; conviction reversed and case remanded); *see generally* DIX & DAWSON, *supra* note 18, § 31.233 at 152 ("Traditional Texas law since at least 1869 has been that despite the prohibitions against double jeopardy, an acquittal because of a variance between the pleading and the proof does not bar reprosecution on a new charging instrument alleging that version of the offense which the State's evidence showed at the first trial.").

[35] *See, e.g., Rowan v. State*, 124 S.W. 668, 673 (Tex. Crim. App. 1910) (quoting treatise for proposition that "[a] variance is not now regarded as material unless it is such as might mislead the defense, or might expose the accused to the danger of being put twice in jeopardy for the same offense," but employing doctrine of *idem sonans* to establish immateriality). The court also quoted another treatise as a basis for adopting the "modern" doctrine of *idem sonans*:

> "There is a rule of growing importance by which courts, for many years, have evinced, by their decisions, a disposition to recede from the fading adherence to common-law technicalities, and hold rather to substance than mere form. Modern decisions conform to the rule that a variance, to be material, must be such as to mislead the opposite party to his prejudice, and hence the doctrine of *idem sonans* has been much enlarged by modern decisions, to conform to the above salutary rule. The law does not treat every slight variance, if trivial, such as the omission of a letter in the name, as fatal. The variance should be a substantial and material one to be fatal."

*Id.* (quoting 3 RICE ON EVIDENCE § 123). The *Rowan* case set out the variance doctrine and its impact upon evidentiary sufficiency that this Court ultimately adopted in *Malik, Gollihar,* and *Fuller*, but cases decided after *Rowan* frequently forgot the logical underpinning for the *idem sonans* rule–immateriality of the variance–and applied only the rigid *idem sonans* exception instead of the broader immateriality doctrine. *See generally* DIX & DAWSON*, supra*, note 18, §

*idem sonans*–when the two names sounded alike although they differed in their spelling.[36]

In those instances, the spelling variance was immaterial, and the conviction would be affirmed.

The fatal-variance doctrine, including the *idem sonans* exception, exalted form over substance when there was no dispute that the person named in the indictment or information was, in fact, the very same person identified at trial by a slightly different name. But in the halcyon days of yore–before the 1985 constitutional and legislative changes–indictments were construed very strictly and almost any mistake in them was called "fundamental" and required reversal of a "void" conviction under an indictment with a mistake.[37]   Double

---

31.162 for a discussion of the traditional materiality law concerning variances.

[36] *See, e.g., Pye v. State*, 154 S.W. 222 (Tex. Crim. App. 1913) (affirming forgery conviction in which the name of the complainant was "Rene Perry," but the name signed to the alleged forged note in the indictment was "Reen Perrey"). In *Pye*, this Court explained,

> The law not regarding orthography, no harm comes from misspelling a name, provided it is *idem sonans* with the true spelling . . . . If the names may be sounded alike without doing violence to the power of the letters found in the variant orthography, then the variance is immaterial . . . . the true rule being that the misspelling, to be material, must have changed the word intended into another word having a different meaning.

*Id.* at 224-25. For a discussion of the confusion and strange results frequently wrought by the *idem sonans* rule, *see Martin v. State*, 541 S.W.2d 605 (Tex. Crim. App. 1976).

[37] For a thorough discussion of the historical treatment of "fundamental defects" in the indictment and the 1985 constitutional and legislative changes, *see generally Studer v. State*, 799 S.W.2d 263 (Tex. Crim. App. 1990) (setting out prior cases and noting that, before the 1985 legislative changes, "[a] substance defect was considered 'fundamental error' since a charging instrument with such a defect failed to confer jurisdiction upon the trial court, and any conviction had upon that instrument was therefore void. Also apparent from the caselaw is that this Court has used the terms 'substance defect,' 'fundamental error,' and 'fatally defective' interchangeably when addressing errors in charging instruments which led to void convictions.").

jeopardy did not apply, however, because it was said that the first indictment charged a "different" offense from the second one–even though the difference was merely a spelling error–as proof of one name is not proof of another.[38]

But after the 1985 legislative abolition of the "fundamental error" doctrine in indictment law, the materiality of defects in indictments and jury charges has been analyzed by looking to the essential elements of the particular criminal offense–the gravamen of that offense–and the hypothetically correct jury charge under the specific indictment or information. In turn, the sufficiency of the evidence has been measured in the same manner. Thus, we turn to the essential elements of the offense of theft.

## B.     Legal Sufficiency and the Elements of Theft.

A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property.[39] The State argues that the gravamen of theft is the unlawful taking of property.[40] Appellant argues that the gravamen of theft is denying the owner the use and enjoyment of his property.[41] They are both correct. "[T]he gravamen of

---

[38] *See Fulmer*, 731 S.W.2d at 948 (Clinton, J., concurring); *see generally*, DIX & DAWSON, *supra* note 18 at § 31.233.

[39] TEX. PENAL CODE § 31.03(a).

[40] State's Brief at 12 ("The grammatical construction of the theft statute also suggests that appropriation of property is the gravamen and focus rather than the owner or victim. . . . This Court should conclude that 'appropriates property' is the gravamen of the offense of theft. Then, it will be clear that it is the property taken, not the name of the victim, that identifies the allowable unit of prosecution in a theft case.").

[41] Appellant's Brief at 11-12 ("There was a failure of proof under federal constitutional law, because the owner's name is a substantive element of the offense. . . . [T]his Court's holding

theft is in *depriving the true owner of the use, benefit, enjoyment or value of his property*, without his consent."[42]  Thus, the gravamen of theft is two-pronged– taking certain specified property away from its rightful owner or depriving that owner of its use or enjoyment. Ownership and appropriation of property are both important.[43]

Appellant also argues that the name of the owner is a substantive element of the

---

in *Ward* [829 S.W.2d 787 (Tex. Crim. App. 1992), *overrruled on other grounds by Riney v. state*, 28 S.W.3d 561 (Tex. Crim. App. 2000)] supports the contention that the owner's identity or name is a substantive element.").

[42] *Stewart v. State*, 44 S.W.3d 582, 588-89 (Tex. Crim. App. 2001) (quoting *McClain v. State*, 687 S.W.2d 350, 353 (Tex. Crim. App. 1985)); *see also Thomason v. State*, 892 S.W.2d 8, 10 (Tex. Crim. App. 1994) (a theft occurs when "a person, with the intent to deprive the owner of property, unlawfully appropriates that property, without the effective consent of the owner."); *Musick v. State*, 51 S.W.2d 715, 716 (Tex. Crim. App. 1932) ("It is elementary, as well as statutory, that the essential element of theft is that the property be taken not only fraudulently but without the consent of the owner, with the intent to deprive the owner of the value and appropriate the property to the benefit of the taker.").

[43] The gravamen of the offense normally dictates the number of allowable units of prosecution.  *See Jones v. State*, 323 S.W.3d 885, 889 (Tex. Crim. App. 2010) ("Absent an explicit statement that 'the allowable unit of prosecution shall be such-and-such,' the best indicator of legislative intent with respect to the unit of prosecution seems to be the focus or 'gravamen' of the offense.").  Thus, with robbery, the gravamen of the offense is the victim; if two people are robbed of one item, there are two robberies. *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999).  But that is not true with theft.  If one item of property is jointly owned by two people, the defendant does not commit two separate thefts when he appropriates that one item.  Thus, if the defendant steals a Jeep that is jointly owned by Mom and Dad, he has committed one theft, even though either Mom or Dad could be named as the owner.  Conversely, if Mom and Dad each own a Jeep, and the defendant steals both of them, he may be convicted of two thefts. *See Iglehart v. State*, 837 S.W.2d 122, 129 n.7 (Tex. Crim. App. 1992) (noting that the State may successively prosecute a person for the discrete number of items stolen from their owners during a single transaction).

Of course, there may be special statutory theft provisions to which the normal rule does not apply.  For example, Penal Code section 31.03(b)(3) sets out an offense for appropriating property that is explicitly represented by law-enforcement personnel as being stolen, even though it is not.  In that case, the gravamen of the offense might not include actual ownership.

offense of theft. That is not correct. The existence of the specific owner is an element, but not his name. Section 31.03(a) of the penal code sets out the offense of theft: "A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property."[44] And subsection (b)(1) states, "appropriation of property is unlawful if . . . it is without the owner's effective consent."[45] There are no names set out in the theft statute. "Owner" is defined as "a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor[.]"[46] Nowhere in the penal code is the name of the owner made a substantive element of theft.[47]

However, the Code of Criminal Procedure, as a matter of state law, requires the State to allege the name of the owner of property in its charging instrument.[48] Under Texas

---

[44] TEX. PENAL CODE § 31.03(a).

[45] TEX. PENAL CODE § 31.03(b)(1).

[46] TEX. PENAL CODE § 1.07(a)(35)(A).

[47] *See Freeman v. State*, 707 S.W.2d 597, 602-03 (Tex. Crim. App. 1986) (plurality op.) (noting that the name of the owner of property is not a part of the definition of theft, although the name of the owner must be alleged in the charging instrument).

[48] TEX. CODE CRIM. PROC. art. 21.08 ("Where one person owns the property, and another person has the possession of the same, the ownership thereof may be alleged to be in either. Where property is owned in common, or jointly, by two or more persons, the ownership may be alleged to be in all or either of them. When the property belongs to the estate of a deceased person, the ownership may be alleged to be in the executor, administrator or heirs of such deceased person, or in any one of such heirs. Where the ownership of the property is unknown to the grand jury, it shall be sufficient to allege that fact."). Similarly, article 21.09 requires the State to describe the personal property stolen by "name, kind, number, and ownership." TEX. CODE CRIM. PROC. art. 21.09. Thus, a theft indictment or information must both name the owner and describe the property as both elements constitute the gravamen of the offense.

pleading rules, ownership may be alleged in either the actual owner or a special owner.[49]  A

special owner is a person who has actual custody or control of property that belongs to

another person.[50]  For example, if Dad owns a car and loans it to Daughter, and Defendant

steals it from the shopping mall where Daughter parked it, the State could allege either

Dad–the title or "actual owner"–or Daughter–the "special owner" who actually  possessed

the car at the time it was stolen–in its theft indictment.  When an entity, such as a

corporation, owns property, the traditionally preferable practice had been to allege ownership

in a natural person acting for the corporation.[51]  But as Judge Clinton noted, this practice

developed in the early twentieth century before the adoption of the 1974 Penal Code when

the definition of "owner" for purposes of the theft statutes was much narrower.  Judge

Clinton explained that, under the current Penal Code, a corporation may both own and have

actual possession of property.[52]  Thus it is perfectly permissible, and sometimes preferable,

---

[49] *See Freeman*, 707 S.W.2d at 602-03 (under article 21.08, "[i]t  is now axiomatic that the name of the title owner of the property or the lawful possessor of the property from whom it was unlawfully taken must be alleged in the charging instrument. . . . [A]n allegation of ownership may be alleged in either the actual owner or in a special owner of the property. However, the State, once having alleged ownership in either the actual owner or a special owner then has the burden of proving beyond a reasonable doubt the ownership allegation.").

[50] *Harrell v. State*, 852 S.W.2d 521, 523 (Tex. Crim. App. 1993).

[51] *Dingler v. State*, 705 S.W.2d 144, 145 (Tex. Crim. App. 1984) ("This Court has long held that when property referred to in a charging instrument belongs to a corporation, it is not only permissible but the better pleading practice to allege ownership in a natural person acting for the corporation, the true owner of the property.")

[52] *Id.*, at 147-48 (Clinton, J., concurring).  Judge Clinton stated,
With definitions now provided by the new penal code for every significant aspect
of the element "without the effective consent of the owner," particularly that

to now allege the corporation–Wal-Mart, for example–as the owner of the property and then call any agent or employee who holds a relevant position in the company to testify that the corporation did not give effective consent for a person to steal or shoplift its property.[53]

Although the *name* of the owner is not a substantive element of theft, the State is required to prove, beyond a reasonable doubt, that the person (or entity) alleged in the indictment as the owner is the same *person* (or entity)–regardless of the name–as shown by the evidence.  For example, in the *Fuller*, case, the indictment alleged injury to an elderly person, namely "Olen B. Fuller."  The State proved that the defendant injured "Buddy Fuller" or "Mr. Fuller."  But there was no dispute at trial that the person who was injured was the very same person as was alleged in the indictment, despite whatever discrepancies might exist in the "real" and "alleged" names.[54]  Suppose the elderly man in that case had testified that his real name was Quincy Magoo, but everyone called him Olen M. Fuller.  That is a variance, but it may well be immaterial if the record shows that the person–whether known

---

"owner" includes a corporation, courts are no longer relegated to looking to the common law for "the better rule of pleading." We may justifiably consider a corporation a "person" within the meaning of Article 21.08, supra, owning property by having title, possession or a greater right to possession to it, as contemplated by V.T.C.A. Penal Code, § 1.07(a)(24). Then in that rare case, where another person actually possesses corporate property, in the sense it is not then and there in the actual care, custody, control or management of an agent of the corporation, a pleader may allege it either way.

*Id.*

[53] *Id.* at 148.

[54] And the defendant could hardly claim that there was a material variance that deprived him of fair notice since Olen M. Fuller was his father.  73 S.W.3d at 251.  A rose by any other name is still a rose, and a father by any other name is still a father.

as Mr. Magoo or Mr. Fuller–is the same person as alleged in the indictment.[55]  However, if the evidence shows that the defendant actually injured Mr. Magoo, who is not the same person as Mr. Fuller, the evidence is insufficient under *Malik, Gollihar,* and *Fuller.*[56]  In sum, it is the identity of the person, not his formal name, that controls and guides the sufficiency of the evidence review.

With this background, we turn to the present case.

### III.

Something puzzling, unexplained, and, thankfully, rare happened in this otherwise mundane armed robbery case: the information named the wrong victim and no one in the trial court seemed to have noticed.[57]

Déjá vu all over again in the present case.  As the State gracefully concedes, "a nearly unbelievable set of facts appears to have occurred in the trial of this case."[58]  Not only did the State fail to offer any evidence that "Mike Morales"–the person alleged in the theft

---

[55] *See Bennett v. United States*, 227 U.S. 333, 338 (1913), *supra* note 23.

[56] *See Ward v. State*, 829 S.W.2d 787, 795 (Tex. Crim. App. 1992) (State alleged that "Seth Haller" was the owner of the burglarized building, but evidence showed that the building was owned by an entirely different person, "Steve Scott"; conviction reversed as evidence was insufficient to prove the person alleged as the owner), *overruled on other grounds by Riney v. State*, 28 S.W.3d 561 (Tex. Crim. App. 2000); *Smotherman v. State*, 415 S.W.2d 430, 430-31 (Tex. Crim. App. 1967) (first indictment alleged that defendant damaged automobile owned by "Charles Kenneth Quinn"; trial court granted motion for acquittal because car was actually owned by "Clinton Fontenot"; State could reindict and prosecute defendant for damage to the car owned by "Clinton Fontenot" because those were separate offenses); *see also Fuller*, 73 S.W.3d at 256-57 (Keller, P.J., concurring) (discussing non-statutory facts–such as the identity of the victim or the identity of the property–that define the allowable unit of prosecution).

[57] *People v. Santiago*, 665 N.E.2d 380, 380 (Ill. App. Ct. 1996).

[58] State's Brief at 14.

indictment–had any ownership interest in or relationship to the property appellant shoplifted, but the jury, without any apparent concern for the missing "Mike Morales," convicted her nevertheless. According to the State, the "only explanation for this exceptional circumstance seems to be that it was so clear to all the parties involved–and possibly the jury as well–that the real victim (both alleged and proven) was Wal-Mart that the discrepancy seemed not to matter."[59] An alternate, less generous explanation, is that everyone was asleep at the wheel.

But is the State correct? "What's in a name? That which we call a rose/By any other name would smell as sweet."[60] No matter what we call it, this flower is still a rose. But a rose does not smell like a pickle. Are roses and pickles interchangeable? Is the evidence legally sufficient under *Jackson, Malik,* and *Fuller* if everyone knew that it was really Wal-Mart who owned the stolen property, so it just did not matter who was alleged as the owner in the information and jury charge? The information could have alleged "Simon Legree," "Carnac the Magnificent," or "Macy's" for all we care, because it was undisputed at trial that Wal-Mart owned the property. No. The parties, the court, and the jury must know the identity of the owner, regardless of how the State names him.

The State analogizes this case to the situation in *Stevens v. State*,[61] in which the State

---

[59] *Id.*

[60] SHAKESPEARE, ROMEO AND JULIET, Act II, scene ii, ll. 1-2.

[61] 891 S.W.2d 649 (Tex. Crim. App. 1995). Article 57.02(b) of the Texas Code of Criminal Procedure permits the victim of a crime to choose a pseudonym to identify himself in all public records. *Id.* at 651.

used a pseudonym–"100589-040584"–for the victim in its indictment, but at trial the parties

and judge referred to him by his legal name.[62]   In that case, unlike the present one, both the

pseudonym and the child's "real" name referred to the very same person.[63]   It was like an

alias, and the defendant was informed, well before trial, of the legal name of the person to

whom the pseudonym belonged.[64]   The State argues that the "name Mike Morales in the

charging instrument was no more than a pseudonym for Wal-Mart. Mike Morales essentially

is Wal-Mart."[65]   Therefore, the court should hold that the fatal variance doctrine is

inapplicable "so long as the defendant's due process right to notice [wa]s satisfied."[66]   The

problem with that argument is that no one at trial ever heard of Mike Morales or that he had

anything to do with Wal-Mart.[67]   The State notes that appellant certainly was not surprised

by the evidence at trial.  She knew, as did everyone else, that the property really belonged to

---

[62] *Id.* at 650.

[63] *Id.* at 651 & n.2 (holding that the fatal-variance doctrine is not applicable to obvious pseudonym cases so long as the defendant's due-process right to notice is satisfied, and that it was in this case because State had listed victim's legal name in compliance with defense motion for disclosure).

[64] *Id.*

[65] State's Brief at 17.

[66] *Id.* (quoting *Stevens*, 891 S.W.2d at 651).

[67] Informally, we do know, from the unadmitted and inadmissible offense report, that Mike Morales was listed as the manager of the local Wal-Mart, but that is not in the record for the jury's consideration.  Furthermore, there was nothing in the record that would support a finding that Mike Morales did or did not give effective consent to appellant to take Wal-Mart's property.  The testimony from Mr. Salinas, the loss prevention officer, established that "Wal-Mart hadn't given [appellant] consent to take that property," but we know nothing about Mike Morales's possible consent or lack thereof.

Wal-Mart.  Her position was she did not steal anything, not that she stole it from some other person or store.  Thus, the notice prong of *Gollihar*'s "immaterial variance" doctrine is not at issue in this case.[68]

What is at issue is whether "the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime."[69]  Would this information, coupled with the trial transcript, prevent the State from charging appellant with a theft from Wal-Mart or one of the loss prevention officers who testified at trial?  Under Texas law, it would not.

The State relies upon *People v. Santiago*,[70] in which the State had pled the wrong person–"Alfredo Jimenez"–as the robbery victim when, in fact, it proved at trial that "Teodulo Rodriquez" was the actual victim.  In that case, the Illinois appellate court, although expressing its amazement at the situation, held that this was not a fatal variance because it was clear at trial that Mr. Rodriquez was, in fact, the robbery victim.  First, when the trial judge read the information to the defendant, he substituted the name of the correct victim, "Teodulo Rodriquez," for the name of the incorrectly alleged victim.[71]  Second, all

---

[68] *See Gollihar*, 46 S.W.3d at 257 ("When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime.").

[69] *Id.*

[70] 665 N.E.2d 380 (Ill. App. Ct. 1996).

[71] *Id.* at 381.

of the evidence at trial showed that it was Mr. Rodriquez who was the robbery victim.[72]

Third, the existence of Mr. Jimenez was accounted for as he testified that he was the manager of the meat market where appellant sometimes worked, but that he knew nothing of the robbery itself. Given these circumstances, the formal defect in the charging instrument[73] did not violate the defendant's due-process rights because he had adequate notice as to the identity of the real victim, and his double-jeopardy rights were protected because "[b]y using the trial transcript and by referring to the record, [the defendant] would be able to use this conviction as a bar to any future prosecution."[74] Aye, there's the rub.

In *Santiago*, anyone who looked at the trial record would know that the judge read and followed the written complaint, which identified the correct victim; all of the evidence concerned the robbery of the correct victim; the incorrect victim was a witness and testified that he had nothing to do with the robbery and was not a victim. The court of appeals noted that, in Illinois "[t]here was a time when a charging document defined the limits of jeopardy, but that time 'has passed and a prior prosecution on the same facts may be proved by resort to the record.'"[75]

---

[72] *Id.*

[73] The original complaint (apparently the trial judge read the original complaint at trial, not the information) had accurately listed Mr. Rodriquez as the robbery victim; it was only in the final, formal information that the error occurred. *Id.* at 382. This was a trial to the court, so there was no jury charge, much less a hypothetically correct jury charge, by which to measure the sufficiency of the evidence.

[74] *Id.*

[75] *Id.* (quoting *People v. Gilmore*, 344 N.E.2d 456 (Ill. 1976)).

Current Texas law on double jeopardy is not the same as that set out in *Santiago*. In *Bailey v. State*,[76] a case that was decided after the *Malik, Gollihar,* and *Fuller* trilogy, this Court rejected the notion that, when the State pleads the wrong victim in a theft-type case, double jeopardy will prevent retrial under an indictment that alleges the correct victim. This Court noted that long-standing Texas precedent allowed such a retrial, and it saw no reason to depart from that hoary tradition.

In *Bailey*, several defendants had been charged with engaging in organized criminal activity resulting in theft of money from the City of Houston.[77] At a bench trial, the evidence showed that the defendants were employed by C & C Services, owned by Rick Collins, to work as flagmen on city-street construction projects.[78] It was alleged that the defendants were involved in a scheme to falsify their time sheets. Rick Collins then issued their paychecks based on false time sheets, and the City of Houston reimbursed C & C for those costs.[79] At the end of the State's case, the trial judge granted the defendants' motion for acquittal. He stated that the evidence was sufficient to show that the defendants misappropriated money, but that they did not steal money from the City of Houston.[80] The State then reindicted the defendants for exactly the same offense but alleged that the owner

---

[76] 87 S.W.3d 122 (Tex. Crim. App. 2002).

[77] *Id.* at 123.

[78] *Id.* at 124.

[79] *Id.* at 125.

[80] *Id.*

of the stolen money was Rick Collins, rather than the City of Houston.  The defendants filed

applications for a writ of habeas corpus, alleging that double jeopardy barred any retrial of

the very same theft offense simply by switching out the "wrong" owner–the City of

Houston–for the "right" owner–Rick Collins, the owner of C & C Services.[81]

In a five-to-two decision, the defendants lost.[82]  The *Bailey* majority relied upon

numerous prior Texas decisions[83] holding that evidence showing that the defendants stole

money from one victim would not sustain a conviction under an indictment alleging a

different victim.[84]  "In other words, proof of one will not prove the other.  Thus, the offenses

---

[81] *Id.* at 125-26.

[82] Judges Womack and Cochran did not participate.  Judge Keasler wrote a dissent, joined by Judge Johnson.  As explained *infra*, although we reaffirm the result in *Bailey*, we adopt much of the reasoning in Judge Keasler's dissent.

[83] The majority cited, *inter alia*, *Swindel v. State*, 32 Tex. 102, 103-04 (1869) (denying habeas relief when defendant, who had been reindicted for theft of a "gelding" after he had been discharged for theft of a horse, when the evidence showed that he had stolen a "gelding"); *Nance v. State*, 17 Tex. App. 385, 389 (1885) (defendant could not be reprosecuted for incest with "Pauline Seitz" after his acquittal for incest with "Pauline Leitz" unless proof of the former would have supported conviction of the latter); *Reynolds v. State*, 124 S.W. 931, 931 (Tex. Crim. App. 1910) (when the defendant is acquitted for assaulting a person whose name was erroneously set out in indictment, he may be reprosecuted for assault upon that same person if charged with correct name); *Fulmer v. State*, 731 S.W.2d 943, 948 (Tex. Crim. App. 1987) (defendant could be reprosecuted for indecency with a child when first indictment alleged victim was "Kim Nguet" but was acquitted on appeal because evidence showed victim's name was "Kim Ngo"); *Smotherman v. State,* 415 S.W.2d 430, 431 (Tex. Crim. App. 1967) (State could reprosecute defendant for damaging property of "Clinton Fontenot" after he was acquitted of damaging that same property of "Charles Kenneth Quinn" when evidence at trial showed that Mr. Fontenot owned the damaged automobile).

[84] *Bailey*, 87 S.W.3d at 127.  The State and the majority in the court of appeals attempted to distinguish *Bailey* by arguing that theft of money is different from theft of other property because cash is fungible–except for the serial number, one dollar bill looks like every other dollar bill.  But *Bailey* did not involve theft of cash; it involved signed paychecks which are not

are not the same for double jeopardy purposes."[85]    This holding is in accordance with

longstanding Texas law.

The dissent in *Bailey* argued that there was only one theft from a single victim, but the

State alleged an incorrect victim in its first indictment.[86]    One might say that the State just

got it wrong and, under *Blockburger v. United States*[87] and its "same elements" test, was not

entitled to a second bite at the apple with a better indictment.  Under a strict "same elements"

reading of *Blockburger*, that is correct.  But, as the dissent acknowledged, we do not apply

*Blockburger* when the double-jeopardy issue involves the allowable unit of prosecution,[88] as

it may when it comes to necessary descriptions of a statutory element that is the gravamen

---

fungible.  And regardless of the form of the money–cash or checks–there was only one discrete theft scheme.  All of the money belonged either to the City of Houston or to Rick Collins; there was no evidence that some of the money belonged to the city and some belonged to Rick Collins.

[85] *Id.* (citing *Fulmer v. State*, 731 S.W.2d 943, 948 (Tex. Crim. App.1987) (Clinton, J., concurring) (opinion adopted by majority) (analyzing double-jeopardy issue by examining the proof needed to support each element of crime).

[86] *Id.* at 130-31 (Keasler, J., dissenting).

[87] 284 U.S. 299 (1932).

[88] *Id.* ("Generally, courts analyze whether two offenses are the 'same offense' under the *Blockburger* test by determining whether each offense requires proof of an element which the other does not.  But that test is applicable only when the defendant is prosecuted under two different statutes for the same conduct. It does not apply when, as here, the defendant is prosecuted twice under the same statute."); *see, e.g., Jones v. State*, 323 S.W.3d 885, 889-91 (Tex. Crim. App. 2010) (discussing double jeopardy in the context of allowable units of prosecution; concluding that the allowable unit of prosecution was the materially false or misleading statement, not the loan application, in a prosecution for making false statement to obtain property or credit involving two loan applications, each of which contained three false statements; holding that defendant could be prosecuted for six offenses without violating double jeopardy).

of the offense. For example, as noted above, Texas law requires the State to allege the name of the owner in a theft information or indictment. Ownership and deprivation of specific property normally constitute the gravamen of theft.[89] Therefore, the jury charge must incorporate those statutorily required descriptions of both ownership and property.[90] And the sufficiency of the evidence is assessed under the hypothetically correct jury charge–a jury charge that incorporates the name of the owner and a description of the property in a theft prosecution.[91] Those descriptions are necessary both to give the defendant notice of the charged offense and to protect him against double jeopardy.

In this case, the State failed to prove appellant stole any property from Mike Morales, whom it had alleged as the owner of the shoplifted items. Under *Malik, Gollihar,* and *Fuller*, the State failed to prove the specific offense charged, and appellant is entitled to an acquittal of that specifically charged offense. The State cannot reprosecute for that alleged offense. We need not address the issue of whether the State may reprosecute under a different charging instrument.[92]

The dissent in *Bailey* aptly noted "the havoc that the word 'variance' has caused in our caselaw."[93] Indeed, that is correct. We agree with the *Bailey* dissent that "[t]he word

---

[89] There may be some special exceptions to the general rule. *See* note 43, *supra.*

[90] TEX. CODE CRIM. PROC. arts. 21.08 & 21.09.

[91] *Malik, Gollihar*, and *Fuller*, *supra.*

[92] See *Dunn*, 442 U.S. at 113 n. 14.

[93] *Bailey*, 87 S.W.3d at 131 (Keasler, J., dissenting).

'variance' ought to be used to describe instances in which there is a minor discrepancy between the facts alleged and those proved, such as a difference in spelling, in numerical digits, or in some other minor way."[94]    But when the discrepancy between the charging instrument allegation and the proof at a theft trial is that of an entirely different person or entirely different property, that discrepancy is not merely a variance, it is a failure of proof.

Because the State failed to prove that "Mike Morales" had any ownership interest in the property that appellant stole, the evidence is insufficient under *Malik, Gollihar,* and *Fuller*.  We therefore reverse the judgment by the court of appeals and enter a judgment of acquittal.

Delivered: March 30, 2011
Publish

---

[94] *Id.*