

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00574-CR

Kevin John **FARESE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 5, Bexar County, Texas
Trial Court No. 223808
Honorable Jason Pulliam, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  February 19, 2014

AFFIRMED

After a jury trial, Kevin John Farese was found guilty of driving while intoxicated on July 28, 2007. He appeals, arguing (1) the State "failed in [its] proof when the charge to the jury did not track the charging instrument"; and (2) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to provide the defense with a letter allegedly stating that Al McDougall[1] suffered from failing cognitive abilities in March 2012. We affirm.

---

[1] Mr. McDougall supervised the breath-alcohol testing program in Bexar County on the date Farese was arrested for DWI. He did not testify at trial. Instead, Debbie Stevens testified that she examined the records Mr. McDougall kept,

In his first point of error, Farese argues that there was a failure of proof in that the charge to the jury did not conform to the charging instrument. Farese emphasizes that the application paragraph of the jury charge did not provide the jury with the option of convicting him if it believed his blood alcohol level was greater than .08, but instead allowed for a conviction only if it believed he had lost the normal use of his mental and physical faculties. *See* TEX. PENAL CODE ANN. § 49.01(2) (West 2011) (defining "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol" or "having an alcohol concentration of .08 or more"). Thus, Farese argues the jury could convict him only if it believed that he had lost the normal use of his mental and physical faculties. And, according to Farese, the evidence is insufficient to show that he had lost the normal use of his mental and physical faculties. However, as pointed out by the State, we do not measure the sufficiency of the evidence by the jury charge actually given to the jury. *See Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997) ("No longer shall sufficiency of the evidence be measured by the jury charge actually given."). Instead, the sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011).

A hypothetically correct jury charge need not incorporate allegations that give rise to immaterial variances. *Id.* at 248. Farese complains about a variance between the allegations in the charging instrument and the proof offered at trial. A variance occurs when there is a "discrepancy between the allegations in the indictment and the proof offered at trial." *Id.* at 246. "Variances are mistakes of one sort or another." *Id.* "Sometimes they make no difference at all; sometimes they make all the difference." *Id.* For example, if an "indictment alleges that the defendant killed Dangerous Dan McGrew," but at trial the State proved that "the defendant killed Little Nell," the

---

and based upon her inspection of the records, the breath intoxilyzer machine was working properly on the date that the test was given to Farese.

State would fail "to prove its allegation that the defendant killed Dangerous Dan McGrew" and the defendant would be entitled to an acquittal. *Id.* at 246-47. "Murder may be murder, but killing one person is not the same offense as killing an entirely different person." *Id.* at 246. "Of course," the defendant could be later "reindicted and tried for the murder of Little Nell, as he was never placed in jeopardy for killing her." *Id.* at 247. "A variance of this type is actually a failure of proof because the indictment sets out one distinct offense, but the proof shows an entirely different offense." *Id.*

If instead the State had proved that "the defendant killed Dan McGrew, but every witness agreed that Dan was not at all dangerous and had never been called Dangerous," or that "the murder victim was really Don McGrew, Daniel MacGrew, or Dan Magoo," there would be a variance between the allegation in the charging instrument and the proof at trial. *Id.* However, such variances are "little mistakes, generally not likely to prejudice a defendant's substantial rights by either (1) failing to give him notice of who it was he allegedly killed, or (2) allowing a second murder prosecution for killing the same person with a different spelling of his name." *Id.* "Little mistakes or variances that do not prejudice a defendant's substantial rights are immaterial." *Id.* at 247-48. "On the other hand, a conviction that contains a material variance that fails to give the defendant sufficient notice or would not bar a second prosecution for the same murder requires reversal, even when the evidence is otherwise legally sufficient to support the conviction." *Id.* at 248.

Under a hypothetically correct jury charge, Farese committed "the offense of DWI if (1) he (2) operated (3) a motor vehicle (4) in a public place (5) while intoxicated." *Kirsch v. State*, 366 S.W.3d 864, 867 (Tex. App.—Texarkana 2012, no pet.); *see* TEX. PENAL CODE ANN. § 49.04 (West Supp. 2013). The definitions contained in section 49.01 of the Texas Penal Code "set forth alternate means by which the State may *prove* intoxication, rather than alternate means of

*committing* the offense." *Bagheri v. State*, 119 S.W.3d 755, 762 (Tex. Crim. App. 2003) (emphasis in original). "The conduct proscribed by the Penal Code is the act of driving while in a state of intoxication." *Id.* "That does not change whether the State used the per se definition or the impairment definition to prove the offense." *Id.* "[E]vidence to prove intoxication under either definition is relevant to the single question of whether appellant was, in fact, intoxicated." *Id.* at 763. Thus, there was no material variance in this case.

In considering the sufficiency of the evidence under the hypothetically correct jury charge, we note there is evidence in the record of the following: (1) Farese was driving a motor vehicle in downtown San Antonio when he turned the wrong way down a one-way street; (2) as he made the turn, he passed a big, red, circular "wrong way" sign; (3) the arresting officer attempted to conduct a traffic stop and although the officer used his PA system four times, he was unable to gain Farese's attention; (4) only after the officer shined his spotlight did Farese stop his vehicle; (5) there was an open container of alcohol in the back seat within Farese's reach, and the officer found no indication that the passenger of the car had been drinking; (6) the officer detected the odor of alcohol emanating from the vehicle; (7) Farese admitted to having consumed alcohol at a bar; (8) while performing field sobriety tests, Farese exhibited signs of intoxication; (9) Farese's breath-alcohol test results indicated that he had consumed an amount of alcohol consistent with the loss of the normal use of mental or physical faculties. This evidence is sufficient to support Farese's conviction for DWI. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (explaining that in a sufficiency review, a court reviews all the evidence in the light most favorable to the jury verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt).

Farese also argues because the application paragraph of the jury charge instructed the jury to find him guilty only if it believed he had lost the normal use of his mental and physical faculties,

the jury may not have reached a unanimous verdict because the jurors may have focused on different definitions of intoxication. However, as noted, the definitions contained in section 49.01 set forth alternate means by which the State may prove intoxication, rather than alternate means of committing the offense. *Bagheri*, 119 S.W.3d at 762. Therefore, the jury need not be unanimous as to whether Farese had an alcohol concentration of .08 or the loss of the normal use of his faculties due to the introduction of alcohol into his body. *See id.*; *see also Leza v. State*, 351 S.W.3d 344, 356-57 (Tex. Crim. App. 2011). The jury needed only to unanimously agree that Farese was intoxicated while operating a motor vehicle in a public place.

We thus overrule Farese's first point of error.

In his second point of error, Farese argues the trial court erred in denying his motion for new trial because he showed the State had failed to provide him with evidence, thus violating *Brady*. In the trial court, Farese filed a motion for new trial, generally alleging that new evidence favorable to him had been discovered since trial. At the hearing on the motion for new trial, no evidence was admitted. Instead, Farese's counsel simply told the trial court,

> [A]bout a week after the trial, a couple of defense attorneys received a letter, a fax from the Center for Neurological Care and Research regarding Mr. McDougall, and he's been diagnosed, I think, since March 2012, with a – I believe it's March 2012, with a terrible affliction that was – they call it very mild cognitive impairment. This was dated August 22, 2012 to that other defense attorney. So, this is from MD, Dr. Marie Alvarez.
>
> The thing is, Your Honor, is that we don't know exactly when he started developing mild cognitive impairment, but it was never brought to my attention. . . . And this is something that was never brought up to defense counsel's – to defense counsel regarding his cognitive impairment.

The trial court denied Farese's motion for new trial.

On appeal, the State emphasizes that under *Brady*, the defendant bears the burden of showing that, in light of all the evidence, it is reasonably probable that the outcome of the trial could have been different had the prosecutor made a timely disclosure. *Hampton v. State*, 86

S.W.3d 603, 612 (Tex. Crim. App. 2002). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Id.* The State points out that this letter was never admitted in evidence at the motion for new trial hearing and is not contained within the appellate record. The State argues that Farese did not meet his burden and that we should overrule his second point of error without prejudice. *See Leza*, 351 S.W.3d at 362-63 (holding that because letters informing appellate defense counsel of a possible *Brady* violation were not part of the appellate record, appellant's point of error was overruled without prejudice to appellant pursuing any *Brady* claim that further investigation might turn up pursuant to his initial application for post-conviction writ of habeas corpus). We agree with the State.

Even taking into account defense counsel's proffer of McDougall suffering from a "mild cognitive impairment" in 2012, Farese was arrested for DWI and took a breath-alcohol test in *2007*. There is no evidence in this record that McDougall was affected by any such mild cognitive impairment in 2007 when he was supervising the breath-alcohol testing program in Bexar County. Further, there is no evidence as to the extent of this "mild disorder" or how it might have affected McDougall. Thus, Farese did not carry his burden. We overrule his second point of error without prejudice to him pursuing any *Brady* claim that further investigation might turn up pursuant to his initial application for post-conviction writ of habeas corpus. *See Leza*, 351 S.W.3d at 362-63.

Accordingly, we affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish