**Opinion filed July 23, 2015**



### In The

# Elebenth Court of Appeals

———————

## No. 11-13-00216-CR

———————

## CARRIE MAE ABIOLA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 372nd District Court**
**Tarrant County, Texas**
**Trial Court Cause No. 1312082D**

### M E M O R A N D U M   O P I N I O N

The jury convicted Carrie Mae Abiola of theft of property of the value of less than $1,500 with two prior theft convictions. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(4)(D) (West Supp. 2014). The jury assessed Appellant's punishment at confinement in the State Jail Division of the Texas Department of Criminal Justice for a term of two years, and the trial court sentenced her accordingly. Appellant argues that the trial court erred when it denied her motion for a directed verdict of

acquittal because the indictment did not contain the name of the correct "owner" of the property. We affirm.

The standard of review applicable to a motion for a directed verdict is the same standard used for a sufficiency review. *Pollock v. State*, 405 S.W.3d 396, 401 (Tex. App.—Fort Worth 2013, no pet.). We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Jones v. State*, 343 S.W.3d 550, 552 (Tex. App.—Fort Worth 2011, no pet.). Under the *Jackson* standard, we examine all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The grand jury indicted Appellant for unlawfully acquiring or otherwise exercising control over property of the value of less than $1,500 with the intent to deprive the owner, Meghan Strickland, of the property. The property included four packages of meat and five cases of beer. A person commits theft if that person "unlawfully appropriates property with intent to deprive the owner of property." PENAL § 31.03(a). Such deprivation is unlawful if "it is without the owner's effective consent." *Id.* § 31.03(b)(1). An "owner" is defined as one who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." *Id.* § 1.07(a)(35)(A). "Possession" is defined as "actual care, custody, control, or management." *Id.* § 1.07(a)(39).

The evidence at trial showed that on January 20, 2013, around 4:00 p.m., Appellant and a male acquaintance entered a Tom Thumb store in Arlington. Two undercover loss-prevention officers, George Trevino and Randy Williams, watched them enter the store. Trevino and Williams were employed through a third-party

contractor to prevent theft at Tom Thumb locations. The officers continued to watch Appellant and her acquaintance as they put five cases of beer and four packages of various meats into their shopping cart. When the two stopped in the middle of an aisle to talk, Trevino went outside so that he would be ready to apprehend them if they tried to steal the meat and beer. Williams continued to watch Appellant and her friend. Appellant pushed her grocery cart toward the exit door and briefly left it next to the exit. Appellant quickly surveyed the area to see whether she was being watched. Apparently comfortable that no one was watching her, she pushed the shopping cart out of the store without making any attempt to pay for the items.

Once Appellant was outside the store, Trevino confronted her. Trevino identified himself as a loss-prevention officer and asked her to come back inside the store. After Trevino handcuffed Appellant, Trevino and Williams escorted her to a break room inside the store. Appellant identified herself and admitted that she had committed the theft in order to pay a late car payment.

Officer Vincent Orso of the Arlington Police Department arrived at the Tom Thumb store shortly thereafter. After he talked with Trevino and Williams, Officer Orso placed Appellant under arrest and took her into custody.

In the indictment, the State charged Appellant with unlawfully acquiring property of the value of less than $1,500 from Meghan Strickland, the "owner." Strickland was the organized retail crime investigator for Tom Thumb in the Dallas/Fort Worth area. At trial, Strickland testified that her undercover agents had filed reports with her regarding the theft. Strickland also testified that, in her capacity, she was actually the owner of the items that Appellant stole and that she had a greater right to possession of those items than Appellant. On cross-examination, Strickland admitted that she was not present when the theft occurred and that the items that Appellant stole were in the care, custody, and control of the store. Appellant's counsel moved for a directed verdict of acquittal based on the

lack of evidence that Strickland was the "owner" of the items Appellant stole. The trial court denied the motion for directed verdict.

It is well settled under Texas law that ownership may be alleged in either the actual owner or a special owner, which is someone who has actual custody or control of property belonging to another person. *Byrd v. State*, 336 S.W.3d 242, 251–52 (Tex. Crim. App. 2011). It is "perfectly permissible" to name a corporation "as the owner of the property and then call any agent or employee who holds a relevant position in the company to testify that the corporation did not give effective consent for a person to steal or shoplift its property." *Id.* at 252. Appellant accurately relies on *Byrd* and *Dingler v. State* for the proposition that, in order to avoid acquittal, the State must name as the "owner" one that has an ownership interest in the property stolen. *Byrd*, 336 S.W.3d at 251, 258; *Dingler v. State*, 705 S.W.2d 144, 146 (Tex. Crim. App. 1984). However, that same reliance also elucidates the critical differences between those cases and the present case.

For instance, in *Byrd*, the alleged owner of the items, which were stolen from a Wal-Mart, was not an employee of the store, did not testify at trial, was not referenced by either party at trial, and seems to have had no connection whatsoever to any Wal-Mart store. 336 S.W.3d at 254. As the court noted, the indictment may as well have alleged that "Carnac the Magnificent" owned the property in question. *Id.* The *Dingler* case presents a closer question but is still clearly distinguishable from the present case. In *Dingler*, a vehicle owned by a retail furniture corporation was burglarized, and the State alleged that the owner was a local store manager with no tenable connection to the vehicle. 705 S.W.2d at 146 (noting that there was "no evidence in the record of appeal that would establish the employment relationship of White [the alleged owner] to the warehouse location, which is where the burglary occurred"). A brief selection from *Dingler* further differentiates it from the present case:

> Other than testifying that he was an employee and a store manager for Louis Shanks, White did not testify what other employment functions he performed for the company; in particular, he was not questioned nor did he testify as to just what his relationship was to the burglarized vehicle, nor what his job with Louis Shanks entailed, nor did he expressly state that he had the care, custody, control, or management of the burglarized vehicle at the time in question. He also did not testify that he was the "special owner" of the burglarized vehicle.

*Id.* at 145. Appellant is correct to rely on *Dingler* for the assertion that "it is not enough to allege ownership in some high-ranking management person." *Id.* at 146. However, the facts of the present case are distinguishable.

Here, Strickland's role and actions remedied all the deficiencies in *Byrd* and *Dingler*. Strickland's testimony made clear that she was responsible for all "external theft," that Trevino and Williams were her agents, that it was her responsibility to supervise investigations and report theft offenses to the police, and that she handled this case. Other courts have held that a loss-prevention officer like Trevino or Williams qualified as an "owner" in similar theft cases, and it would be strange and unnecessarily burdensome if the manager of these officers could not also qualify as an "owner." *See, e.g.*, *Murillo v. State*, No. 05-10-00869-CR, 2011 WL 856911, at *3 (Tex. App.—Dallas Mar. 14, 2011, pet. ref'd) (not designated for publication) (holding evidence was sufficient to show that loss-prevention manager was the "owner" of the property). As a store employee entrusted to help prevent this kind of theft, Strickland had a greater right to possession of the stolen items than Appellant and, thus, qualified as an "owner." We hold that there was sufficient evidence for a rational trier of fact to have found beyond a reasonable doubt that Strickland was the "owner" of the items Appellant stole from the store. Appellant's sole issue on appeal is overruled.

5

We affirm the judgment of the trial court.

JIM R. WRIGHT

CHIEF JUSTICE

July 23, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.