NO. 07-11-00102-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 30, 2012

MICHAEL MARTIN, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 2010-460,888; HONORABLE DRUE FARMER, JUDGE

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Michael Martin, appeals his conviction for criminal trespass,[1] a Class B misdemeanor, and resulting sixty-day sentence in the Lubbock County jail. On appeal, he challenges the sufficiency of the evidence to sustain his conviction. We will reverse.

---

[1] See Tex. Penal Code Ann. § 30.05 (West Supp. 2011).

Factual and Procedural History

At approximately 11:30 P.M. on March 28, 2010, Lubbock police officers, Eric Quejada and Stephen Burgan, encountered twenty-four-year-old appellant and four other young adults sitting and possibly smoking marijuana inside a wooden teepee at Legacy Play Village, a thirty-acre community-built park in Lubbock. A third officer, Josh Gafford, arrested appellant for criminal trespass.

In its information, the State alleged that appellant "did then and there intentionally or knowingly enter property of another . . . without the effective consent of the said [owner] and . . . had notice that the entry was forbidden." At trial on those allegations, the State introduced three signs which purported to post the hours during which visitors were allowed to enter Legacy Play Village.[2] Bruce Flournoy, who was in charge of security at the park, conceded that the three signs could be understood to conflict with one another, making it difficult, if not impossible, to determine the precise hours during which the public was allowed access to the park. Though it was established at trial that appellant was located inside the park after public-access hours under any interpretation of the signs, there was no evidence indicating when appellant entered the park.

A Lubbock County jury found appellant guilty of criminal trespass, and the trial court assessed punishment at sixty days in the Lubbock County Jail. On appeal from his conviction, appellant contends that the evidence is insufficient to support his

_____

[2] At the park gate, the following sign was posted: "PARK HOURS / 9AM – DUSK / 7 DAYS A WEEK." Near the pavilion at the entrance to the park, two more signs were posted. One of those signs provided, in pertinent part, as follows: "Park Hours: 9 am to Sunset, 7 days/week." The other provided the following: "No trespassing from 10 pm to 7 am."

conviction. We agree that the evidence is insufficient to support a conviction for the offense charged and, consequently, will reverse the trial court's judgment of conviction and render a judgment of acquittal.

## Applicable Law and Standard of Review

Criminal Trespass

A person commits the offense of criminal trespass "if the person enters or remains on or in property of another . . . without effective consent and the person: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so." TEX. PENAL CODE ANN. § 30.05(a); Salazar v. State, 284 S.W.3d 874, 876 (Tex.Crim.App. 2009). Generally, we read section 30.05 as creating two ways in which a person may commit the offense of criminal trespass: trespass by entry and trespass by remaining. See Campbell v. State, 626 S.W.2d 91, 92 (Tex.App.—Corpus Christi 1981, no pet.) (finding reversible, unassigned error when appellant was charged with trespass by remaining but jury charge permitted conviction for trespass by entry or trespass by remaining). For purposes of section 30.05, "'[e]ntry' means the intrusion of the entire body." TEX. PENAL CODE ANN. § 30.05(b)(1).

On appeal, appellant concedes that he "was found in the park well after the permitted times." According to appellant, however, it matters not that the record establishes that Officers Quejada and Burgan discovered appellant inside the wooden teepee at Legacy Park Village after dark and after 10:00 P.M., a time at which, under any interpretation of the posted signs, appellant was not permitted to be at the park. This is so, appellant contends and the State concedes, because the State alleged only

3

the offense of criminal trespass by entry and was, therefore, limited to that theory of criminal liability. Relying on Campbell, appellant goes on to argue that, because the State did not plead the "remain on property" language, appellant could not be convicted only upon proof that he remained on park property beyond the permissible hours. See Campbell, 626 S.W.2d at 92. With respect to the sufficiency of the evidence, appellant maintains that the State failed to prove the offense it charged by failing to prove that he *entered* the property without effective consent and with notice that his entry was forbidden at the time he entered. So, as we read his contentions, his position is this: In the absence of evidence showing when he entered the park, the evidence cannot show that he entered without consent and with notice that his entry was forbidden.

Variance, Hypothetically Correct Jury Charge, and Sufficiency

Here, the State alleged that appellant entered the park without consent and with notice that his entry was forbidden. At trial, it appears the State proved that appellant *remained* on the park property at a time in which his presence was not permitted. Between the pleading and proof, then, there appears to be a variance.

A variance occurs whenever there is a discrepancy between the allegations in the indictment and the proof offered at trial. Byrd v. State, 336 S.W.3d 242, 246 (Tex.Crim.App. 2011) (citing Gollihar v. State, 46 S.W.3d 243, 246 (Tex.Crim.App. 2001)). On the effect of a variance, the Texas Court of Criminal Appeals observed the following: "Variances are mistakes of one sort or another. Sometimes they make no difference at all, sometimes they make all the difference." Byrd, 336 S.W.3d at 246.

4

The State's failure to prove the statutory elements it has chosen to allege cannot be an immaterial variance. See Cada v. State, 334 S.W.3d 766, 774, 776 (Tex.Crim.App. 2011); Campbell v. State, No. 07-10-00333-CR, 2012 Tex. App. LEXIS 1999, at *10 (Tex.App.—Amarillo Mar. 13, 2012, no pet. h.) (mem. op., not designated for publication). A variance of this type is actually a failure of proof because the indictment sets out one distinct offense, but the proof shows an entirely different offense. Byrd, 336 S.W.3d at 247. "[I]f the penal offense sets out various statutory alternatives for the distinct elements of the crime, the jury charge may contain only those alternative elements that are actually alleged in the indictment." Cada, 334 S.W.3d at 773.

In a federal due process evidentiary-sufficiency review, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Adames v. State, 353 S.W.3d 854, 860 (Tex.Crim.App. 2011), cert. denied, 2012 U.S. LEXIS 2268 (Mar. 19, 2012). This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence. Jackson, 443 U.S. at 319; Adames, 353 S.W.3d 860. On review, this Court determines whether the necessary inferences made by the trier of fact are reasonable, based upon the cumulative force of all of the evidence. Adames, 353 S.W.3d 860 (citing Hooper v. State, 214 S.W.3d 9, 16–17 (Tex.Crim.App. 2007)).

We conduct this constitutional review by measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324. In Malik and its progeny, the Texas Court of Criminal Appeals has set forth the state law standard for ascertaining what those elements are: the elements of the offense are to be defined by the hypothetically correct jury charge which, for that particular case, "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).[3] For the jury charge to be authorized by the indictment–or, here, by the information–the offense must have been alleged in the charging instrument. See Cada, 334 S.W.3d at 773; Gollihar, 46 S.W.3d at 254–56. So, in the instant case, the hypothetically correct jury charge would authorize conviction if the evidence was sufficient to prove that appellant entered the park at a time at which he lacked consent to do so and knew his entry was forbidden.[4]

After having reviewed the law of variance and the hypothetically correct jury charge, we conclude that appellant's contention and the State's concession are well taken and that the State was required to prove when appellant entered the park so that

---

[3] See Johnson v. State, No. PD-0068-11, 2012 Tex. Crim. App. LEXIS 479, at *3 (Tex.Crim.App. Mar. 21, 2012); Adames, 353 S.W.3d at 860; Byrd, 336 S.W.3d at 246; Cada, 334 S.W.3d at 773; Fuller v. State, 73 S.W.3d 250, 254 (Tex.Crim.App. 2002) (Keller, P.J., concurring); Gollihar, 46 S.W.3d at 253.

[4] After the State agreed to the removal of "or remains" from the jury charge, the actual jury charge reflected the elements defined by the hypothetically correct jury charge.

it could establish that he entered without consent and with notice that his entry was forbidden. See TEX. PENAL CODE ANN. § 30.05(a)(1). So, we now turn to the evidence to determine whether the State produced sufficient evidence that appellant entered Legacy Play Village without consent and with notice that his entry was forbidden.

Analysis

The signs do appear to be incongruous and could be read to provide conflicting information on when, exactly, the public was no longer granted access to the park. Regardless of what the signs said, however, there was no evidence of when appellant entered Legacy Play Village such that we could measure that time against the hours posted by the signs to determine whether appellant had consent to enter or notice his entry was forbidden.

Again, there is a good deal of evidence that appellant was found in the park at around 11:30 P.M., well after the park's hours by any interpretation of the posted signs. However, Officer Quejada agreed that he did not know when appellant came to the park; he and Officer Burgan had not driven by the park any time earlier in their patrol and, therefore, could not provide any estimated time of appellant's arrival at the park. The arresting officer, Officer Gafford, also testified that he did not know when appellant had actually entered the park. Likewise, Flournoy testified that he did not know when appellant entered the park. There was no evidence that appellant entered the park at a time at which his entry was forbidden. There is a good deal of evidence, which appellant recognizes, that appellant *remained* in the park after permitted hours, but that theory was not a theory the State alleged. See Campbell, 626 S.W.2d at 91–92.

7

As to the entry element of the crime charged, the State points to some circumstantial facts and observations that could be said to support the jury's inference that appellant entered the park after public-access hours. The State contends that the jury could have relied on appellant's age and stature to infer that he would not have entered the park during regular hours. Further, only one gate was partially open which could suggest that the park had been closed. Recent vandalism of the park would also suggest that the park was checked prior to closing, posits the State. The State also offers that the jury could have concluded that "whoever closed the park at night" would not have done so had the vehicles been parked outside the gates.[5] The problem with such a conclusion is that no evidence exists in the record to support it; there is no evidence in the record of who closed the park, whether that person noted vehicles in the parking lot, or if or when the park gates were closed. Simply put, the inferences that the State suggests as support for a conclusion as to when appellant entered the park are nothing more than speculation. There is simply too great a void with respect to what the record provides for the jury to have made reasonable evidence-based inferences to arrive at the conclusions offered by the State. See Hooper, 214 S.W.3d at 16 (observing that "[a] conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt"); see also Ivey v. State, No. 07-08-00079-CR, 2008 Tex. App. LEXIS 8653, at *7–13 (Tex.App.—Amarillo Nov. 17, 2008, no pet.) (mem. op., not designated for publication) (applying Hooper's principles to element of identity).

---

[5] Flournoy testified that he characteristically went out to the park two or three times a day but did not recall if or when he went to the park on March 28, 2010. Again, he testified that he did not know when appellant entered the park that day.

Bearing in mind the principles set forth in <u>Malik</u>, <u>Gollihar</u>, <u>Fuller</u>, <u>Cada</u>, <u>Byrd</u>, and <u>Adames</u>, we conclude that the State was required, but failed, to prove the specific offense charged, and appellant is entitled to an acquittal of that specifically charged offense. "[S]ometimes [variances] make all the difference." <u>Byrd</u>, 336 S.W.3d at 246. We sustain appellant's sole point of error and conclude that the evidence was insufficient to support a conviction for criminal trespass by entry as alleged by the State.

Conclusion

Having sustained appellant's challenge to the sufficiency of the evidence, we reverse and render a judgment of acquittal. <u>See</u> Tᴇx. R. Aᴘᴘ. P. 43.2(c).

Mackey K. Hancock
Justice

Do not publish.

9