**Opinion issued June 17, 2014**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-11-00766-CR**

_____

**JENNEESE PATRICIA BANKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from County Criminal Court at Law No. 14**
**Harris County, Texas**
**Trial Court Case No. 1759292**

## MEMORANDUM OPINION

A jury found Appellant guilty of the offense of Class B misdemeanor theft.[1]

The trial court sentenced Appellant to 180 days in jail, suspended the sentence,

placed her on community supervision for one year, and assessed a $200 fine.

---

[1]    *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(2)(A)(i) (Vernon Supp. 2013).

Appellant raises two issues on appeal. She complains of insufficient evidence to support the judgment and of jury-charge error.

We affirm.

## Background Summary

Appellant worked at a Target store in Spring, Texas processing returns for customers. K. Wall, who worked in Target's asset protection department to reduce theft, received notice of a suspicious transaction processed on Appellant's register. Wall investigated by reviewing store video and receipts. He discovered that, on September 1, 2010, Appellant had purchased 15 items for $155.56 at another Target store. Wall also discovered that, on September 3, 2010, an unknown woman brought the receipt and several of the items that Appellant had purchased to the returns counter where Appellant was working.

When she processed the return, Appellant did not scan the bar codes on the items. Instead, Appellant manually input or keyed codes into the register for the items. When she did this, Appellant did not enter the correct codes for two of the items actually returned. Instead, Appellant entered codes for different, more expensive items that were listed on the receipt but were not returned. For example, the unknown woman returned a barstool, which the receipt reflected cost $19.99; however, Appellant entered the code for an ottoman listed on the receipt, which

2

had cost $59.00. Appellant also entered a code for another item listed on the September 1st receipt that was not returned.

The total value of the items actually returned by the woman was $41.10. However, when the return transaction was concluded, Appellant issued the woman a Target gift card for $93.40. Thus, the gift card had $52.30 more on it than the unknown woman was entitled to receive.

After the return transaction was completed, the unknown woman did not leave the customer service counter. Instead, the woman stayed at Appellant's register and purchased new merchandise. The woman used the $93.40 gift card, which Appellant had just given her, to purchase the new items.

Wall discovered another suspicious return processed by Appellant, which occurred on September 10, 2010. The same unknown woman had returned items and Appellant had given the woman cash for the return. Wall's investigation revealed that Appellant had given the woman more money than the value of the items returned, resulting in a loss to Target of $31.98.

Appellant was charged by information with the Class B misdemeanor offense of theft. The information read as follows:

> JENNEESE PATRICIA BANKS, hereafter styled the Defendant, heretofore on or about SEPTEMBER 3, 2010 AND SEPTEMBER 10, 2010, did then and there unlawfully appropriate, by acquiring and otherwise exercising control over property, namely, MONEY, owned by K[.] WALL, hereafter styled the Complainant, of the value of over

3

fifty dollars and under five hundred dollars, with the intent to deprive the Complainant of the property.

At trial, the State presented the testimony of Target employees, K. Wall and L. Barger, who had conducted Target's internal investigation of Appellant's alleged theft. The State also introduced store video, taken by a camera over Appellant's register, showing the return transactions on September 3 and September 10. Wall gave testimony while the video played explaining in detail what was occurring in the video. The video shows Appellant looking at the receipt and entering codes for the items. The video shows that the unknown woman returned a barstool and not an ottoman as Appellant had entered. Appellant is also seen handing the gift card to the woman. The woman is then seen using the gift card to purchase new items from Appellant a few moments later. When the State rested, Appellant moved for directed verdict.

Appellant claimed that the State had not shown that she had taken "money" in excess of $50 as alleged in the information and as required to prove a Class B misdemeanor theft offense.[2] Appellant focused on the State's proof regarding her acquisition of the Target gift card containing a $52.30 overage. Appellant claimed that this represented $52.30 in store credit and did not represent $52.30 in "money." Appellant asserted the gift card "can only be used at Target," "money cannot be given back" for the card, and "it is not negotiable under the UCC."

---

[2] *See* TEX. PENAL CODE ANN. § 31.03(e)(2)(A)(i).

4

After hearing arguments from both sides, the trial court denied Appellant's motion for directed verdict, holding, "I think that the cash value represented by the gift card can be considered monetary value, and therefore money for the purposes of a theft case." The trial court also made oral "findings of fact" in which it found that the Court finds that "the monetary cash value represented on the gift cards . . . is money for the purposes of this lawsuit."

Appellant also moved to quash the information. She asserted that it was unclear with what offense she had been charged. With respect to the motion to quash, the trial court stated,

> I think you are correct. It is unclear as to what it is that she's being charged with. However, you have waived that argument by not timely filing your Motion to Quash . . . prior to the start of the case.
>
> Had you filed it, I can safely say, based on the pleadings as we have them, I would have granted the Motion to Quash. . . I think that would have been the more appropriate avenue to dispose of this matter. My suspicion is that ideally pled, this would say, money, to-wit, cash . . . and/or store credit . . . so that she . . . would know specifically what it is that she's charged with.
>
> But, I don't think that at this late stage of the trial the Defendant can be heard to complain about a lack of notice as to what it is that she's accused of because we're through the trial now.

Appellant testified in her own defense. She stated that she had mistakenly keyed in the wrong numbers with respect to the September 3 transaction. With respect to the September 10 transaction, Appellant testified that the customer had

given her the wrong receipt. The items on that receipt had cost more than the items actually returned. Appellant stated that she keyed in the numbers from the receipt given to her, resulting in the customer being refunded more than the value of the items returned.

The jury found Appellant guilty of the offense of Class B misdemeanor theft. Appellant choose to have the trial court assess her punishment. The trial court sentenced Appellant to 180 days in jail, suspended the sentence, placed her on community supervision for one year, and assessed a $200 fine.

This appeal followed. Appellant presents two issues.

## Sufficiency of the Evidence

Appellant structures her first issue as a challenge to the sufficiency of the evidence to support the judgment of conviction for the offense of Class B misdemeanor theft. As framed, Appellant asserts that the evidence is insufficient to support her conviction because a variance existed between the offense alleged in the information and the evidence admitted at trial.

Appellant avers that the State failed to prove that she misappropriated "money" in excess of $50, as alleged in the information, and as required to prove Class B theft. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(2)(A)(i) (Vernon Supp. 2013). Pursuant to the Penal Code, a person commits the class B misdemeanor offense of theft if she unlawfully appropriates property, valued at between $50 and

6

$500 dollars, with the intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a), (e)(2). Although a description of the property stolen is not a substantive element of the offense, the Code of Criminal Procedure requires the State to describe the property in its charging instrument. TEX. CODE CRIM. PROC. ANN. art. 21.09 (Vernon 2009); *Byrd v. State*, 336 S.W.3d 242, 257 (Tex. Crim. App. 2011); *see also Lehman v. State*, 792 S.W.2d 82, 84 (Tex. Crim. App. 1990) (explaining that stolen property must be generally described in charging instrument and conforming evidence must be adduced).

Appellant acknowledges that the State presented evidence showing that she stole $52.30 on a Target gift, but she asserts that this represents store credit and does not constitute "money" as alleged in the information. Appellant asserts that the only evidence establishing that she misappropriated "money" was the State's evidence showing that she stole $31.98 in cash on September 10, 2010. Citing this evidence, Appellant claims that, at most, the State proved that she was guilty of the offense of Class C misdemeanor theft, which involves unlawful appropriation of property valued at less than $50. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(1)(A).

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Byrd*, 336 S.W.3d at 246. The State was required to prove,

7

beyond a reasonable doubt, that the property alleged in the indictment was the same property shown by the evidence. *Byrd*, 336 S.W.3d at 252. When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

Under Texas state law, we measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Gollihar v. State*, 46 S.W.3d 243, 252–53 (Tex. Crim. App. 2001); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *See Gollihar*, 46 S.W.3d at 253; *Malik*, 953 S.W.2d at 240. However, sometimes the words in the charging instrument do not perfectly match the evidence at trial. *Byrd*, 336 S.W.3d at 246.

"The hypothetically correct jury charge does not necessarily have to track all of the charging instrument's allegations—'a hypothetically correct charge need not incorporate allegations that give rise to *immaterial* variances.'" *Daugherty v.*

8

*State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013) (quoting *Gollihar*, 46 S.W.3d at 253, 256). A variance occurs when there is a discrepancy between the charging instrument and proof at trial. *Id.* A variance is material if it (1) failed to provide the defendant with sufficient notice of the charges against her such that she was unable to prepare an adequate defense at trial, or (2) would subject the defendant to the risk of being prosecuted later for the same crime. *Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002); *Gollihar*, 46 S.W.3d at 257. Only a material variance between the charging instrument and the proof at trial will render the evidence insufficient to support the conviction. *Gollihar*, 46 S.W.3d at 257.

Even if we accept Appellant's argument that the $52.30 overage on the gift card is not "money," and thus a variance occurred, we conclude that such variance was not material. In her brief, Appellant offers no argument that she was without sufficient notice of the charged offense. At trial, Appellant defended against the State's theft of money charge by asserting that she had made a mistake when she keyed in the wrong codes associated with higher priced items than those actually returned. The record indicates that Appellant had formulated this defense before the State offered its evidence showing that the $52.30 was on a Target gift card and was not cash money. During opening statements, defense counsel averred that the evidence would show that Appellant had made a mistake. He told the jury, "This

9

is a case of an error." At the end of his opening statement, defense counsel told the jury, "[M]y client is guilty of only one thing: Of making a mistake."

When she testified, Appellant claimed that she had focused on the wrong code on the receipt and had entered that code by mistake. She explained that she had keyed in the code for the $59.00 ottoman rather than the 19.99 bar stool because the two items were next to each other on the receipt. She claimed that it was an error and that she had no intent to deprive Target of the extra $52.30 on the gift card. Appellant did not deny that she had given the unknown woman $52.30 more on the gift card than the woman was entitled to receive. By her testimony, Appellant acknowledged that she had given the woman the gift card with an unauthorized $52.30 on the card. She claimed that she had not intentionally made the error. She stated that she knew that Target has a camera over every register recording all of an employee's activities. In other words, Appellant's defense was to negate the intent element of the theft offense.[3] The record does not reflect Appellant was either confused or surprised by the variance or that her defense was prejudiced by the State's failure to prove the property description exactly as alleged in the information. *See Fuller*, 73 S.W.3d at 253–54 ("There is no

---

[3]     As mentioned, Appellant did assert that the $52.30 on the gift card was not "money" as a ground for directed verdict. However, Appellant argued to the trial court that the State had not proven the $52.30 on the gift card was "money" because it did not fit the statutory definition of "money." In other words, Appellant was making a statutory interpretation or matter of law argument to the trial court, which the court denied.

indication in the record that appellant did not know whom he was accused of injuring or that he was surprised by the proof at trial.").

Nor does the purported variance prevent the application of double jeopardy to this case. The Target receipts introduced at trial showed that, on September 3, Appellant refunded, to the unknown woman, $52.30 more than the woman was entitled to receive. The evidence established that the $52.30 was included in the gift card, which Appellant gave the woman. The State offered into evidence the video showing the entire return transaction, including Appellant handing the woman the gift card containing the $52.30 overage. The evidence showed that the woman immediately used the gift card to purchase new items at Target. Wall testified that the $52.30 overage on the gift card was a monetary loss to Target.

The State established that, on September 3, Appellant refunded the woman $52.30 more than she was entitled and included that amount on a store gift card, which she gave to the woman. Thus, the State proved that Appellant unlawfully appropriated the $52.30 included on the gift card. From the record, it is clear that this is the same property as the "money" described in the information as having been misappropriated by Appellant. *See Gollihar*, 46 S.W.3d at 258 (citing *United States v. Apodaca*, 843 F.2d 421, 430 n.3 (10th Cir. 1988) for proposition entire record, not just indictment, may be considered in determining whether double

11

jeopardy precludes subsequent prosecution). Appellant is in no danger of being prosecuted again for the theft of the $52.30 on the gift card.

The record shows that Appellant was provided with sufficient notice of the charges against her such to prepare an adequate defense at trial, and she would not be subject to being prosecuted later for the same crime. *See Fuller*, 73 S.W.3d at 253–54; *Gollihar*, 46 S.W.3d at 257. Thus, we conclude that the variance between the information and the proof at trial was immaterial. We hold that the evidence was sufficient to support the judgment of conviction. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

We overrule Appellant's first issue.

## Jury-Charge Error

In her second issue, asserts the trial court erred by failing to include language from Penal Code section 31.09 in the charge's application paragraph. Section 31.09 provides, "When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense." TEX. PENAL CODE ANN. § 31.09 (Vernon 2011). Here, the trial court included section 31.09 language in the abstract portion of the jury charge but did not include it in the application

paragraph. Appellant did not object to the omission of the language in the application paragraph.

Even if we accept Appellant's assertion that the trial court erred by omitting the section 31.09 language, reversal will not result unless the record shows "egregious harm" such that Appellant was denied a fair trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Egregious harm exists when the record shows that a defendant has suffered actual, rather than merely theoretical, harm from jury-charge error. *Almanza*, 686 S.W.2d at 174. To meet this standard, the error must be so harmful that it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). When analyzing egregious harm, we consider the four factors set out in *Almanza*: (1) the entire jury charge, (2) the state of the evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171; *see also Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).

Here, the charging instrument alleged Appellant had unlawfully appropriated money on September 3, 2010 and on September 10, 2010. It did not expressly state that the two thefts occurred as part of one scheme or continuing course of

13

conduct. Appellant did not object to the information on this ground. The information also stated that Appellant was charged with stealing property valued over $50 but under $500.

At trial, the State offered evidence showing Appellant unlawfully appropriated the $52.30 on gift card on September 3 and stole $31.98 on September 10. Both thefts involved the same unknown woman returning merchandise processed by Appellant. In its closing argument, the State told the jury that Appellant could be found guilty of misdemeanor Class B theft if it found that Appellant had stolen $52.30 on September 3 or if it found that she had stolen the $52.30 plus the $31.98 on September 10.

The court's charge properly instructed the jury that it could find Appellant guilty only if it found that she had unlawfully appropriated property, valued at between $50 and $500 dollars, with the intent to deprive the owner of the property. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(2). The abstract portion of the charge contained the section 31.09 language. *Cf. Vasquez v. State*, 389 S.W.3d 361, 371 (Tex. Crim. App. 2012) (concluding, in egregious harm analysis, that reasonable jury would refer to abstract definition without needing to have it repeated again in the application paragraph).

On appeal, Appellant argues that the omission of the section 31.09 language in the application paragraph resulted in egregious harm because "the jury was

14

improperly allowed to cumulate the amounts allegedly stolen in the two thefts to reach the necessary jurisdictional minimum of fifty dollars for a class B theft, without the necessary prerequisite finding that the two thefts were committed pursuant to one scheme or continuing course of conduct." Appellant's argument is fundamentally flawed under the facts of this case.

Whether the jury aggregated the two theft amounts of $52.30 and $31.98, without determining that each amount was stolen pursuant to a one scheme or continuing course of conduct, does not affect the outcome. To find Appellant guilty of Class B theft, the jury would necessarily have determined that Appellant unlawfully appropriated $52.30. Without that amount, the jury could not have found the minimum $50 amount required for Class B theft, regardless of whether it cumulated the two theft amounts. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(2); *see also Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002) (presuming that jury followed instruction). The jury's determination that Appellant had unlawfully appropriated the $52.30, by itself, supports Appellant's conviction for Class B theft. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(2); *cf. Lehman*, 792 S.W.2d at 84–85 (holding that State need not prove each constituent theft of an aggregated theft allegation if State proves defendant stole enough property to satisfy the jurisdictional requirement).

After reviewing the record, we hold that any error by the trial court in not including section 31.09 language in the the application portion of the jury charge did not cause Appellant to suffer egregious harm. We overrule Appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. TEX. R. APP. P. 47.2(b).

16