ACCEPTED
05-12-01199-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
2/11/2015 9:23:49 AM
LISA MATZ
CLERK

FILED: 2/11/2015
Fifth Court of Appeals
Lisa Matz, Clerk

*Appellant Requests Oral Argument*

# No. 05-12-01199-CR

*IN THE COURT OF APPEALS*
*FOR THE FIFTH DISTRICT OF TEXAS*
*AT DALLAS, TEXAS*

## MARK PATRICK MCCAY,
**Appellant**

## vs.

## THE STATE OF TEXAS,
**Appellee**

*On appeal from Criminal District Court No. 4*
*of Dallas County, Texas*
*In Cause No. F11-00694-K*

## APPELLANT'S REPLY BRIEF
## TO STATE'S AMENDED BRIEF

*Counsel of Record*

**Lynn Richardson**                          **Katherine A. Drew**
**Chief Public Defender**                    **Assistant Public Defender**
**Dallas County, Texas**                     **State Bar No. 06117800**

**Frank Crowley Courts Building**
**133 N. Riverfront Boulevard, LB-2**
**Dallas, Texas 75207-4399**
**(214) 875-2360** (*phone*)
**(214) 875-2363** (*fax*)
*Kathi.Drew@dallascounty.org*

***Attorneys for Appellant***

# LIST OF PARTIES

**APPELLANT**
Mark Patrick McCay

**APPELLEE**
The State of Texas

**DEFENSE COUNSEL AT TRIAL**
Jeff Buchwald
7849 Alto Caro
Dallas, Texas  75248

Karen Lambert
6060 N. Central Expressway, Suite 560
Dallas, Texas  75206

**STATE'S ATTORNEY AT TRIAL**
Donna Strittmatter & Amy Croft
Assistant District Attorneys
Dallas County District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

**APPELLANT'S ATTORNEY ON APPEAL**
Katherine A. Drew
Dallas County Public Defender's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, Texas 75207-4399

**STATE'S ATTORNEY ON APPEAL**
Patricia Poppoff Noble
Dallas County District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

# TABLE OF CONTENTS

LIST OF PARTIES .......................................................................................... ii

INDEX OF AUTHORITIES.............................................................................. iv

Reply to State's Argument: Points of Error 1 and 2 .....................................1

*The indictment did not allege that Bendtsen suffered from diminished capacity or that Appellant knew Bendtsen suffered from diminished capacity.* ........................................................................................................1

*The indictment did not allege exploitation of an elderly person.* ....................4

*An "owner" was not alleged in the indictment.* ..............................................4

*The property which was the subject of the alleged theft was not described.* .........................................................................................................5

*Alleging an attempted theft does not excuse the deficiencies in the indictment.* .........................................................................................................6

*The deficiencies in the indictment are not subject to a harm analysis or, in the alternative, are not harmless.* .......................................................8

Reply to State's Argument: Point of Error 3 .......................................................12

*It is proper to consider expert opinion in evaluating the sufficiency* ............12

*The video of the "Baylor will" does not support the State's theory of coercion.* .........................................................................................................14

Reply to State's Argument: Point of Error 4 .......................................................15

*The error is preserved for review.* .................................................................15

PRAYER ..............................................................................................................16

CERTIFICATE OF SERVICE ............................................................................17

CERTIFICATE OF COMPLIANCE....................................................................17

# INDEX OF AUTHORITIES

## Cases

*Adams v. State*,
  707 S.W.2d 900 (Tex. Crim. App. 1986)...............................................................9

*Alexander v. State,*
  820 S.W.2d 821 (Tex. App.—Waco 1991, pet. ref'd).............................................7

*Buford v. State,*
  111 S.W.2d 258 (Tex. Crim. App. 1937).............................................................7

*Byrd v. State*
  336 S.W.3d 242 (Tex. Crim. App. 2011)...........................................................6, 9

*Cook v. State*,
  256 S.W.3d 846 (Tex. App.—Texarkana 2008, no pet.) .....................................7

*Cook v. State,*
  902 S.W.2d 471 (Tex. Crim. App. 1995)..............................................................8

*Croucher v. Croucher*,
  660 S.W.2d 55 (Tex. 1983) ...............................................................................3

*Epps v. State,*
  811 S.W.2d 237 (Tex. App. – Dallas 1991, no pet.)............................................7

*Gonzales v. State*,
  No. 03-97-00484-CR, 1999 Tex. App. LEXIS 436 (Tex. App.—Austin Jan. 28,
  1999, no pet.) (not designated for publication) ................................................7, 8

*Green v. State*,
  578 S.W.2d 411 (Tex. Crim. App. 1979)..............................................................6

*Rothermel v. Duncan*,
  369 S.W.2d 917 (Tex. 1963) ..............................................................................3

*Sorce v. State*,
  736 S.W.2d 851 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd) ...................7

*Studer v. State*,
  799 S.W.2d 263 (Tex. Crim. App. 1990)...............................................................8

*Teal v. State*,
230 S.W.3d 172 (Tex. Crim. App. 2007)................................................................9

*Thomas v. State*,
408 S.W.3d 877 (Tex. Crim. App. 2013)............................................................16

*Young v. State*,
675 S.W.2d 770 (Tex. Crim. App. 1984)..............................................................7

*Zillender v. State*,
557 S.W.2d 515 (Tex. Crim. App. 1977).............................................................16

**Statutes**

TEX. CODE CRIM. PROC. art. 21.08........................................................... 3, 5, 6, 9

TEX. CODE CRIM. PROC. art. 21.09............................................................. 5, 6, 8

TEX. CODE CRIM. PROC. art. 44.01(c) ..................................................................12

TEX. ESTATES CODE § 251.001 ...........................................................................3

TEX. PENAL CODE § 31.03(c) .................................................................... 15, 16

TEX. PENAL CODE § 31.03(e) ...............................................................................6

TEX. PENAL CODE ANN § 31.01(3)(E).................................................................4

**Rules**

TEX. R. EVID. 401........................................................................................16

TEX. R. EVID. 404(b) ...................................................................................15

**Constitutional Provisions**

TEX. CONST. art. I § 10...................................................................................8

TEX. CONST. art. V § 12(b).............................................................................8

**TO THE HONORABLE COURT OF APPEALS:**

**COMES NOW** Appellant, Mark Patrick McCay, and submits this Brief in reply to the State's Amended Brief, which was filed on January 30, 2015.

### Reply to State's Argument: Points of Error 1 and 2

With respect to the indictment, the State's Amended Brief continues to suffer from the same infirmities as did its Original Brief. While prior indictments had alleged diminished capacity, (CR1: 6; CR2: 12, 49, 142), the specific property which was the object of the attempted theft, (CR2: 12, 49, 142), and the owner of this property, (CR2: 12, 49, 142), the indictment on which the State proceeded to trial did not contain any of these essential allegations.[1] (CR1: 99). As such, it both fails to state an offense and fails to provide constitutionally sufficient notice.

### *The indictment did not allege that Bendtsen suffered from diminished capacity or that Appellant knew Bendtsen suffered from diminished capacity.*

Despite the State's recognition that the indictment fails to allege either that Bendtsen lacked testamentary capacity and/or that Appellant knew she lacked testamentary capacity and/or suffered from diminished capacity, both concepts form the core of the State's arguments that the indictment both alleged an offense and provided adequate notice:

---

[1] The State now recognizes that these allegations were deleted prior to trial but argues that this language was "not legally essential to plead the offense." (State's Amended Brief at p. 3).

1

- "Here, the State could offer and rely on evidence of diminished capacity because it was *relevant under the remaining allegations* in the modified indictment." (State's Amended Brief at p. 4) (emphasis added).

- "Nor is the State precluded from relying on evidence of MaryEllen's *diminished capacity as proof of Appellant's specific intent* to unlawfully change the ownership of her property upon her death." (State's Amended Brief at p. 4) (emphasis added).

- "MaryEllen could not effectively consent to any decision to change the transfer of her property at the time the last will was drawn and signed because *she very obviously lacked the ability to make informed and rational decisions related to the disposition of her property*." (State's Amended Brief at p. 6-7) (emphasis added).

- "The State would show from the existing circumstances that *Appellant knew of MaryEllen's diminished capacity*, and that *he caused her to execute a purported will in his favor despite his knowledge that she had not done this while competent.* (State's Amended Brief at p. 7) (emphasis added).

- "Evidence would show that Appellant caused an elderly woman *known to him to have diminished capacity* to make informed and rational decisions about the reasonable disposition of her property, to execute such a will." (State's Amended Brief at p. 8) (emphasis added).

These arguments, made by the State to support the indictment, are essentially arguments more appropriately made, if at all, in support the State's theory that the evidence was sufficient to show that Appellant committed attempted theft. Nothing that the evidence at trial ultimately showed or failed to show can be used to uphold the indictment, which did not allege a lack of testamentary capacity or that Appellant knew that Bendtsen suffered from any form of diminished capacity, testamentary or otherwise. (CR1: 99).

2

The State's theory was that Appellant committed a crime when he, by unalleged means, somehow "caused" Bendtsen to execute the "Baylor will" and then filed that will for probate. The State was not alleging theft from an estate, which it, perhaps, could have legally done. *See* TEX. CODE CRIM. PROC. art. 21.08 (stating "[w]hen the property belongs to the estate of a deceased person, the ownership may be alleged to be in the executor, administrator or heirs of such deceased person, or in any one of such heirs"). In essence, the State charged Appellant with conduct which is not criminalized by any specific statute.

Assuming, *arguendo,* that it is an offense to attempt "theft by will," a point which Appellant does not concede, then the indictment must, of necessity, have alleged that Bendtsen lacked testamentary capacity or that her testamentary capacity was undermined by undue influence.[2] These are not mere "evidentiary facts," but essential pleadings. If the State intended to rely on evidence that Bendtsen either lacked testamentary capacity or that Appellant exercised undue influence, it should have so alleged in the indictment. Because the indictment alleged neither, it failed to state an offense.

---

[2] To prevail in any will contest in a civil court, a litigant must show either that the testator lacked testamentary capacity or, having testamentary capacity, was subjected to undue influence. *See Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983); *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963); *see also* TEX. ESTATES CODE § 251.001.

### *The indictment did not allege exploitation of an elderly person.*

The State, despite recognizing the lack of this allegation in the indictment, continues to argue that this prosecution is "*a case of exploitation of an elderly individual* that our Legislature has manifested an intent to prohibit and to penalize. TEX. PENAL CODE ANN § 31.01(3)(E) (providing consent is not effective if given by an elderly person who by reason of advanced age is known by the actor to have a diminished capacity to make informed and rational decision about the reasonable disposition of property)". (State's Amended Brief at 8) (emphasis added). If the State had wished to rely on this theory, it certainly could have done so. Indeed, a prior indictment had included this language; yet, the State moved to strike that language prior to trial. (CR1: 6; RRSupp5: 4). Having voluntarily abandoned the "exploitation of the elderly" theory, the State cannot now rely upon that theory, either to uphold the indictment or to support the conviction.

### *An "owner" was not alleged in the indictment.*

In an effort to excuse its failure to allege an owner, the State argues that the allegation of "any person" as the victim of Appellant's alleged attempted theft was adequate because "[t]here was only a class of persons affected that could be identified as the victims of Appellant's conduct. That class included anyone who would otherwise enjoy the legal right to possess whatever property constituted MaryEllen's estate." (State's Amended Brief at p. 15). As Appellant reads the

4

State's arguments, the State is essentially arguing that the only class of persons who could be affected by the "Baylor will" were Bendtsen's heirs-at-law. Yet, the State also argues that it was acceptable for the indictment to allege "any person" as the victim of the alleged theft because it is permissible to allege that an owner is unknown. (State's Amended Brief at p. 15, *citing to* TEX. CODE CRIM. PROC. art. 21.08 which states as follows: "where the ownership of the property is unknown to the grand jury, it shall be sufficient to allege that fact.").

The State cannot have it both ways. Either the heirs-at-law to Bendtsen's estate were known or they were not. If known, those owners needed to be alleged in the indictment. Similarly, if the owners were unknown to the grand jury, then the indictment should have set forth that allegation. Moreover, under Article 21.08, ownership could have been alleged in the heirs, executor or administrator of Bendtsen's estate. The allegation of "any person" is wholly insufficient, either to allege an offense of attempted theft of an estate or to provide sufficient notice as to the intended victim of the alleged attempted theft.

### *The property which was the subject of the alleged theft was not described.*

The State argues that the global allegation of "property" was sufficient to describe anything that Bendtsen owned at her death; hence, the indictment alleged a valid attempted theft. (State's Amended Brief at p. 16). While the Code permits a "general classification" description of property in an indictment, TEX. CODE CRIM

5

PROC. art. 21.09, that statute does not authorize *no description* of property at all. *Green v. State*, 578 S.W.2d 411, 415 (Tex. Crim. App. 1979). This is particularly true since proof of the identity of the property, as required by Article 21.09, becomes a part of the State's burden of proof at trial. *Id.*

The degree of theft with which a person is charged is dependent on the valuation of the property taken. TEX. PENAL CODE § 31.03(e). The potential punishment depends on the proven value of the property stolen. *Id.* The necessity of a description of the property was crucial to a jury's determination in this case of whether the aggregate value of the property was in excess of the value alleged.

### *Alleging an attempted theft does not excuse the deficiencies in the indictment.*

The State endeavors to excuse all pleading deficiencies in the indictment on grounds that a charging instrument for an attempted offense need only allege that "the defendant (1) has the intent to commit the target offense, and (2) did an act amounting to more than mere preparation that tended but failed to effect the actual commission of the offense intended."[3] (State's Amended Brief at p. 14). The State's arguments wholly ignore the specific pleading requirements essential to theft cases. *Byrd v. State,* 336 S.W.3d 242, 251-52 & n. 48 (Tex. Crim. App. 2011); TEX. CODE CRIM. PROC. arts. 21.08, 21.09.

---

[3] Appellant has answered most of the State's allegations in this regard in his Brief to this Court. (Appellant's Amended Redrawn Brief at pp. 18-19, 21-22, 24-26).

6

Additionally, the State relies on cases which do not support its arguments. Appellant has already distinguished the main case on which the State relies, *Sorce v. State*, 736 S.W.2d 851, 856 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd), in its brief to this Court. (Appellant's Amended Redrawn Brief at pp. 21-22). Most of the other cases on which the State relies do not involve theft offenses at all. *Young v. State*, 675 S.W.2d 770, 770-71 (Tex. Crim. App. 1984) (attempted burglary); *Buford v. State,* 111 S.W.2d 258 (Tex. Crim. App. 1937) (assault with intent to rob); *Cook v. State*, 256 S.W.3d 846 (Tex. App.–Texarkana 2008, no pet.) (attempted aggravated sexual assault of a child); *Alexander v. State,* 820 S.W.2d 821 (Tex. App.—Waco 1991, pet. ref'd) (attempted capital murder); *Epps v. State,* 811 S.W.2d 237 (Tex. App.—Dallas 1991, no pet.) (attempted burglary of a habitation). Hence, the holdings in those cases are not dispositive.

A theft case on which the State does rely, *Gonzales v. State*, No. 03-97-00484-CR, 1999 Tex. App. LEXIS 436 (Tex. App.—Austin Jan. 28, 1999, no pet.) (not designated for publication), is also readily distinguishable. In *Gonzales*, the defendant was indicted for a completed, as opposed to an attempted, theft. *Id*., 1999 Tex. App. LEXIS 436 at * 8. The indictment listed specific amounts of money allegedly stolen by the defendant and specifically alleged that the named owner's consent was not effective because it was given by a person "of advanced age who was known by the Defendant to have a diminished capacity to make

7

informed and rational decisions about the reasonable disposition of property." *Id.* at * 9. The owner was identified, the property described, and the theory of theft from an elderly person alleged. *Id.* Additionally, the sufficiency of the indictment in *Gonzales* was not challenged. Hence, *Gonzales* is wholly distinguishable from the case at bar and cannot be relied upon to support the indictment.

### The deficiencies in the indictment are not subject to a harm analysis or, in the alternative, are not harmless.

The State continues to argue that, even if an allegation of an owner by name and a description of the property is necessary to provide notice, then the error is harmless as Appellant knew these matters and his defense was not impacted. (State's Amended Brief at pp. 16-18).

It is essential in any theft crime for an indictment to describe the property stolen by name, kind, number, and the ownership of that property. TEX. CODE CRIM. PROC. art. 21.09. Texas has a long history of demanding particularity in pleading instruments. TEX. CONST. art. I § 10; TEX. CONST. art. V § 12(b) *see generally Studer v. State*, 799 S.W.2d 263 (Tex. Crim. App. 1990). An indictment must charge a person with the commission of an offense; the failure to do so renders the document purporting to be an indictment void and deprives a trial court of jurisdiction. *Cook v. State*, 902 S.W.2d 471 (Tex. Crim. App. 1995). The test appears to be as follows: Can the district court and the defendant determine, from the face of the indictment, that the indictment intends to charge a felony or other

8

offense for which a district court has jurisdiction? *Teal v. State*, 230 S.W.3d 172, 181 (Tex. Crim. App. 2007).

The indictment wholly fails to meet the proper requirements to allege a theft offense. No owner's name, as required by both statute and case law, Article 21.08; *Byrd v. State,* 336 S.W.3d 242, 251-52 & n. 48 (Tex. Crim. App. 2011), is alleged. No description of the property which was the subject of the alleged attempted theft is alleged. No description of any acts by which Appellant allegedly "caused" Bendtsen to make the "Baylor will" is alleged. And, the one act described with any specificity, *i.e.,* filing the will for probate, is not an illegal act. The requirement that the indictment allege the "commission of an offense" is wholly lacking. There can be no harm analysis when the indictment fails to allege the commission of an offense.

Appellant recognizes that the Court of Criminal Appeals has established a harmless error standard with respect to notice defects when the commission of an offense is otherwise alleged. *Adams v. State*, 707 S.W.2d 900, 903 (Tex. Crim. App. 1986). Under this test, it must be determined (1) whether the indictment failed to convey a requisite item of notice, (2) whether this failure impacted the defendant's ability to prepare a defense, and (3) how great an impact. *Id*.

The State argues that "Appellant's defense was not in any way impacted by the failure to name anyone as an owner who might take MaryEllen's property upon

9

her death. Her daughter survived her and…he was well-prepared to meet Mary Ellen's daughter in the courtroom." (State's Amended Brief at 17). However, it is significant that the State deliberately deleted any reference to Giron as the owner of Bendtsen's estate just before trial. During trial, the State introduced evidence that, upon her death, Bendtsen was survived by her daughter, two grandchildren, her sister Ann, and her nephews John and Henry McClamrock, all of whom may have had a greater right to possession of Bendtsen's property after her death than Appellant.[4] (RR5: 167-169). Evidence was also heard that, under the "Florida will," if Giron had not survived Bendtsen, the estate would have gone to Giron's children. (RR7: 212, 220; RR8: 30). This evidence not only expanded the scope of the prosecution beyond Giron as an "owner," but also operated to confuse the jury, which could well have believed, without guidance from the indictment, that all members of Bendtsen's family were entitled to share in her estate. This is particularly true since neither "heirs" not "heirs-at-law" was defined for the jury. The failure to allege an owner cannot be considered harmless.

The lack of a description of Bendtsen's property is equally not harmless. In this regard, the State argues that "Appellant may be fairly presumed to know the property the last will purported to transfer to him." (State's Amended Brief at 17).

---

[4] Appellant does not dispute that the only "right" he had to any portion of Bendtsen's estate was by virtue of the "Baylor will."

10

However, Bendtsen bequeathed "all of my property of every kind and description of which I may die seized or possessed, or in which I have an interest, whether real, personal or mixed, and wherever situated" to Appellant and Burgess in the "Baylor will." (SX 5). The only exception was two specific bequests: "real and costume jewelry to Beatrice Ann Grayson, except for one brooch of her choice to Rose Cline" and a "cradle rocking chair" to Giron. (State's Exhibit 5). The description of the property Bendtsen may have owned was all encompassing and certainly expanded the scope of the prosecution beyond her 5/12 interest in the house at 4949 Swiss Avenue. Evidence was heard that Bendtsen had social security income and the interest from a bank account. (RR Supp: 28, 179). The jury heard Giron testify that when she discovered that Appellant had filed an application to probate a will, she thought he was "attempting to steal everything." (RR8: 44). While the litigants may have focused on Bendtsen's interest in the Swiss Avenue house, the jury could easily have looked beyond the house in considering what "property" Appellant was allegedly attempting to steal.

The lack of specifically required allegations in the indictment forced Appellant to be prepared to defend against every possible contingency, despite the fact that for years it had been clear that he was expected to defend against a theft allegation concerning specific property allegedly taken from Giron alone. (CR2: 12, 49, 142). The impact of the last minute changes in the State's trial strategy vis-

11

à-vis the indictment had to have adversely affected of Appellant's ability to prepare a defense, particularly with respect to the potential for jury confusion. Any other holding would render the specific pleading requirements for a theft indictment meaningless.

**Reply to State's Argument: Point of Error 3**

***It is proper to consider expert opinion in evaluating the sufficiency of the evidence.***

In its Amended Brief, the State continues to argue that Dr. Crowder, the forensic psychiatrist, "without a recognized field of expertise in whether one has testamentary capacity, told the jury that MaryEllen had testamentary capacity when the last will was executed. (RR9\166). This opinion testimony should never have been admitted." (State's Amended Brief at p. 62). The State almost appears to be attempting to raise a cross-point on a ruling of law, TEX. CODE CRIM. PROC. art. 44.01(c), though the State's arguments are not presented in that fashion.

Dr. Crowder was a Board Certified psychiatrist engaged in both teaching at UT Southwestern Medical School and clinical work. (RR9: 155-156). He testified that he consulted on legal cases and worked on "testamentary capacity cases, will contests." (RR9: 156). He had testified in 30-50 cases regarding testamentary capacity. (RR9: 157). These credentials were not contested by the State.

Moreover, while that State made multiple objections to aspects of Dr. Crowder's testimony, (RR9: 164, 165, 167, 168, 170, 172, 173), the State made no

12

objection to Dr. Crowder's opinion regarding Bendtsen's testamentary capacity or to the evidence that it was based on a continuity of intent:

> Q. (By Mr. Buchwald) Based on your review of the records and your review of the tape and everything else that you reviewed in this case, do you think Mary Ellen Bendtsen had testamentary capacity to execute her will on February 22nd, 2005?
>
> A. If I were to look at the tape alone, I wouldn't have necessarily known. I don't think it's detailed enough. Um, if -- if the collateral information I have is accurate and it seems to be, then her continuity of intent was to leave the house to Mark and Justin. So, I would say if you take into account the fact that she had through a period of years told people, I want to leave the house to Mark and Justin, when you take that into account, I would say, yes, she had testamentary capacity on that date.
>
> Q. What would -- could you explain to the jury what continuity of intent means?
>
> A. What I mean by that is: Is the person changing all time? If a person left a house to a son, say in three or four different wills, and then on the day of their death someone drops in and let's say it's a – it's a TV personality, and everything goes to the TV personality. That's highly suspect because that's not what the person's intent was through time.
>
> If a person has intended through time to give an estate to one particular person, that's been relatively consistent or repeated multiple times, it's more trustworthy, and I tend to trust a person on the last day, even if it's toward the end of life, or if there's some deficits, I tend to trust that a lot more than a dramatic change from a previous intent.

(RR9: 166-167). The State cannot be heard to complain about the admission of testimony to which it did not object. Nor can the State dismiss Dr. Crowder's

13

opinion as unreliable because it failed to challenge his credentials or expertise in this area.

### *The video of the "Baylor will" does not support the State's theory of coercion.*

In its Amended Brief, the State continues to argue as follows: "The State encouraged the jurors to ask: If Appellant hadn't been in the hospital room on February 22nd, 2005, would MaryEllen have executed that will? "No" is the obvious answer after viewing that gruesome recording of MaryEllen executing her will." (State's Amended Brief at p. 59).

Appellant disagrees with the State's characterization of the video. (SX 1) Yes, Bendtsen was in a hospital bed in an emergency room, a venue where few people look their best. While Bendtsen appears tired and frail in the video, she does not appear incompetent or "out of it." Her voice was firm and audible. She was asked "yes" or "no" questions, which she answered clearly. She answered that she did not want her money or her house to go to her daughter, but rather wanted "Justin and Mark" to have them.[5] When asked where she wanted her ashes to go after her cremation, she supplied her address on Swiss Avenue without prompting.

Nor does anyone appear to be coercing Bendtsen. Indeed, at one point when she was equivocal, Olsen told her that she needed to say "yes" or "no;" obviously

---

[5] Bendtsen was clearly referring to Appellant and Justin Burgess. (SX 1).

14

she was being afforded the option to refuse to sign the document or to answer Olsen's questions in such a way as to make the signing of the "Baylor will" unfeasible. While the will was propped up for her to make her mark and her hand was guided towards it, Bendtsen was not propped up or aided, other than to help make her mark.[6] Rather than Olsen restraining her hand, it appears that Bendtsen is, in fact, patting Olsen's hand, as if to reassure him and/or to seek or give comfort.

## Reply to State's Argument: Point of Error 4

### *The error is preserved for review.*

The State persists in arguing that Appellant has failed to preserve error on the admission of the Farrington extraneous offense. (State's Amended Brief at pp. 69-70).

An extensive *sub rosa* hearing was held concerning the admissibility of the Farrington offense. (RR8: 126-250). The prosecutor made it plain that the evidence was being offered under both TEX. PENAL CODE § 31.03(c) (similarity) and TEX. R. EVID. 404(b) (disallowing evidence of other crimes, wrongs or acts to prove character, but allowing such evidence for other purposes, such as proof of intent). Defense counsel made multiple objections: relevancy, that Appellant was never

---

[6] It should be noted that in the video Bendtsen was not wearing her large glasses, which may have impaired her vision. (SX 1; *see also* DX 7&8).

charged with a crime vis-à-vis the Farringtons, improper character evidence, remoteness under Section 31.03 (c), and the inflammatory, *i.e.,* prejudicial nature of the evidence. (RR8: 238-239, 250). The trial court ruled that the Farrington offense was similar under the theft statute and that the probative value outweighed prejudicial effect under Rule 403. (RR8: 248; RRSupp: 5, 6). The trial court fully understood that defense counsel believed the evidence did not meet the standard of admissibility under either Section 31.03(c) and/or Rules 401 and 404(b). The objections voiced at trial comport to the arguments raised on appeal.

In the alternative, even if certain words were not used in trial counsel's objections, it is clear that the trial court, as well as the prosecutor, understood the legal basis of counsel's objections, which is sufficient preservation. *See Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013); *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). Appellant is entitled to have this point of error addressed on the merits.

## PRAYER

**WHEREFORE,** Appellant continues to pray that this Court will reverse his conviction and enter an order of acquittal. Alternatively, Appellant prays that this Court will reverse his conviction and order the indictment dismissed with prejudice. In the further alternative, Appellant prays that this Court will reverse his conviction and remand for a new trial.

16

Respectfully submitted,

/s/ Katherine A. Drew

Lynn Pride Richardson
Chief Public Defender
Dallas County, Texas

Katherine A. Drew
Assistant Public Defender
State Bar No. 06117800
Dallas Co. Public Defender Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, Texas 75207-4399
(214) 875-2360 *(phone)*
(214) 875-2363 (*fax)*
Kathi.Drew@dallascounty.org

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing brief was served on Patricia Poppoff Noble, Dallas County Criminal District Attorney's Office (Appellate Section), 133 N. Riverfront Blvd., LB-19, 10th Floor, Dallas, Texas, 75207, by electronic transmission and by hand delivery on February 11, 2015.

/s/ Katherine A. Drew
Katherine A. Drew

## CERTIFICATE OF COMPLIANCE

I hereby certify that in accordance with the terms of TEX. R. APP. P. 9.4(i)(1) the word count in this document, which is based on the word count function of Microsoft Word 2010, the software in which this document was prepared, is 4,107 inclusive of all contents except for the cover page, table of contents, index of authorities, identity of parties, caption, signature, certificate of service, and certificate of compliance.

/s/ Katherine A. Drew
Katherine A. Drew

17