# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-17-00244-CR
_____

### KENNETH RAY CHATMAN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause No. 15-08-08596-CR**

## MEMORANDUM OPINION

Appellant Kenneth Ray Chatman appeals his conviction for forgery. *See* Tex. Penal Code. Ann. § 32.21 (West Supp. 2017).[1] In issue one, Chatman argues that the evidence was insufficient to support his conviction for the offense charged in the indictment because there is a fatal variance between the language in the indictment and the evidence presented at trial. In issue two, Chatman complains that his trial

---

[1]We cite to the current version of section 32.21 of the Penal Code because the subsequent amendment is not material to the outcome of the appeal.

1

counsel provided him with ineffective assistance of counsel by requesting a jury instruction that allowed Chatman to be convicted of the lesser-included offense of forgery. We affirm the trial court's judgment.

Background

A grand jury charged Chatman with the offense of forgery against an elderly individual, a third-degree felony, and further alleged five prior felony convictions for purposes of punishment enhancement. The indictment alleges that Chatman

> on or about March 14, 2015 . . . did then and there, with intent to defraud or harm another, pass a writing that is or purports to be a check, that was altered, made, completed, executed, or authenticated so that it purports to be the act of [K.V.], . . . an elderly individual, who did not authorize that act[.]

The check was issued from the account of Beacon Holdings Corporation ("Beacon"), dated March 14, 2015, made payable to the order of Kenneth Ray Chatman, and signed by Alma Michaels. K.V., who owns Beacon and who was seventy-eight years old when the offense occurred, testified that his bank notified his secretary that one of Beacon's issued checks contained an unauthorized signature, and K.V. testified that he did not know Alma Michaels.

K.V. testified that he kept some of Beacon's checks in his vehicle's glove compartment, and he believed that someone from the local car wash had taken the check while his vehicle was being washed. K.V. explained that his bank gave him a

2

copy of the stolen check, which was made payable to Chatman. K.V. testified that neither he nor his secretary had signed the check, nor had he authorized Chatman to use the check.

Louis Nava, the district manager of a local liquor store, testified that he reviewed the store's surveillance video footage from March 14, 2015, and he gave the video to the police. Nava testified that when a person cashes a check at the liquor store, the store requires that he put his personal information and thumbprint on the check. Leslie McCauley, a Sergeant with the Montgomery County Sheriff's Office's Crime Laboratory, testified that she is a latent print examiner, and McCauley determined that the thumbprint on the check belongs to Chatman. Kenneth Lewis, the owner of the car wash where K.V.'s check was stolen, testified that Chatman worked for him part-time over the past few years and that K.V. was one of his long-time customers. After viewing the video footage from the liquor store, Lewis testified that the person cashing the check in the video "looks like" Chatman.

Officer Rodney Baseke of the Willis Police Department testified that in March 2015, he was working as a detective when he was assigned to investigate Chatman's case. Baseke testified that after viewing the video from the liquor store, he positively identified Chatman as the person who cashed the check. During his investigation, Baseke spoke with Chatman, and a recording of their conversation was admitted into

evidence. Chatman told Baseke that K.V. gave him a blank check for washing his car and that Chatman had someone else make it out. Chatman also admitted that he had made a mistake and wanted to pay K.V. back. According to Baseke, Chatman confessed to committing the forgery.

After the State rested, Chatman's counsel moved for a directed verdict, arguing that the State failed to show that the offense was committed against an elderly person because Beacon is not an elderly individual, Beacon and K.V. are different entities, and there was no evidence that Chatman cashed the check purporting to be an act of K.V. The trial court, finding that reasonable minds could draw more than one conclusion from the evidence, denied Chatman's motion for a directed verdict. During the jury charge conference, defense counsel requested that the trial court include the lesser-included offense of forgery in the jury charge, and the trial court granted the request.

The jury found Chatman guilty of the lesser-included offense of forgery. The trial court conducted a punishment trial, during which Chatman stipulated to the enhancement paragraphs alleged in the indictment. The trial court found the enhancement paragraphs to be true and assessed Chatman's punishment at five years of confinement. Chatman appealed.

Analysis

4

In issue one, Chatman argues that the evidence is insufficient to support his conviction for the offense charged in the indictment because there was a fatal variance between the language in the indictment and the evidence presented at trial. Chatman contends that according to the specific language in the indictment, the State was required to prove that he passed a writing that purported to be the act of K.V., but the evidence shows that the act was not authorized by K.V. According to Chatman, the signature on the check purported to be an act of A.M., and K.V., whose name did not appear on the check, testified that he did not make, sign, or authorize the check. Chatman argues that because the State named the wrong victim in the indictment, it was impossible for the State to prove the offense as pleaded. The State argues that no variance exists because the evidence showed that K.V. was the person authorized to sign company checks on Beacon's behalf.

In a legal sufficiency review, we examine the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015). Thus, the sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury

charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the offense for which the defendant was tried. *Id.*

A variance occurs when there is a discrepancy between the allegations in the indictment and the proof offered at trial. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). In conducting an evidentiary-sufficiency analysis, we consider two types of variances: material and immaterial. *Thomas v. State*, 444 S.W.3d 4, 9 (Tex. Crim. App. 2014). Because immaterial variances do not affect the validity of a criminal conviction, a hypothetically correct jury charge need not incorporate allegations that give rise to only immaterial variances. *Id.* A variance is fatal when it is a material variance that prejudices the substantial rights of the defendant. *Id.*; *Gollihar v. State*, 46 S.W.3d 243, 257-58 (Tex. Crim. App. 2001). In determining whether a variance is material, we look to see whether the indictment informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial and whether the indictment would subject him to the risk of being prosecuted later for the same crime. *Gollihar*, 46 S.W.3d at 258.

The jury charge instructed the jury to consider the lesser-included offense of forgery, and the application paragraph of the lesser-included instruction omitted any reference to K.V. or his status as an elderly individual. The jury found Chatman

6

guilty of the lesser-included offense of forgery. Because the jury did not convict Chatman for the offense of forgery against an elderly individual as alleged in the indictment, we conclude that Chatman's argument that there was a fatal variance between the language in the indictment and the evidence presented at trial is without merit. We further conclude that Chatman's argument that it was impossible for the State to prove the offense as pleaded is also without merit, because the jury charge for the lesser-included offense of forgery did not reference K.V. or his status as an elderly individual.

A person commits a forgery by passing a writing that has been altered made, completed, executed, or authenticated so that it purports to be the act of another who did not authorize that act. Tex. Penal Code. Ann. § 32.21(a)(1)(A)(i), (B). A person must pass the writing with the intent to defraud or harm another. *Id.* § 32.21(b). The Texas Penal Code defines "another" as a "person other than the actor." *Id.* § 1.07(a)(5) (West Supp. 2017). "Person" means "an individual, corporation, or association." *Id.* § 1.07(a)(38) (West Supp. 2017). The testimony at trial established that K.V. owned Beacon and that only K.V. and his secretary, D.W., were authorized to sign checks on behalf of Beacon. The evidence further showed that there was no Alma Michaels associated with Beacon. Thus, the evidence showed that to be valid, any check issued from Beacon's account would have to be signed by K.V. or D.W.

7

We conclude that by passing the Beacon check from "Alma Michaels" to the liquor store, Chatman did, with intent to defraud or harm another, pass a writing that is or purports to be a check, that was altered, made, completed, executed, or authenticated so that it purports to be the act of another who did not authorize that act. *See* Tex. Penal Code Ann. § 32.21(a)(1)(A)(i), (B); *Williams v. State*, 688 S.W.2d 486, 488-90 (Tex. Crim. App. 1985) (concluding evidence was sufficient to find defendant guilty of forgery); *Hill v. State*, 750 S.W.2d 2, 5 (Tex. App.—Fort Worth 1988, pet. ref'd) (holding that an allegation of the non-existence of the person whose writing the instrument is purported to be constitutes an allegation that such person did not authorize the act). Because the evidence is sufficient to support Chatman's conviction for forgery, we overrule issue one. *See Jackson*, 443 U.S. at 319; *Malik*, 953 S.W.2d at 240.

In issue two, Chatman complains that his trial counsel provided him with ineffective assistance of counsel by requesting a jury instruction that allowed Chatman to be convicted of the lesser-included offense of forgery. According to Chatman, his conviction was the result of the erroneously submitted jury instruction because the instruction more broadly defined the offense and lacked a specific victim.

To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). An appellant must demonstrate a reasonable probability that but for his counsel's errors, the outcome would have been different. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Id.*

Chatman must prove that there was no professional reason for specific acts or omissions of his counsel. *See id*. at 836. In addition, any allegation of ineffectiveness "must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). Ordinarily, trial counsel should be given an opportunity to

9

explain his actions before being denounced as ineffective. *Menefield*, 363 S.W.3d at 593. Thus, the bare record on direct appeal is usually insufficient to demonstrate that "counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone*, 77 S.W.3d at 833 (footnote omitted).

Because Chatman did not file a motion for new trial, Chatman's counsel did not have an opportunity to explain the choices he made in representing Chatman, and the record before us is silent about the strategy Chatman's attorney employed. Consequently, on this record, we cannot conclude that Chatman received ineffective assistance of counsel. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Chatman has failed to defeat the strong presumption that counsel's decisions during trial fell within the wide range of reasonable professional assistance. *See Bone*, 77 S.W.3d at 833; *see also Thompson*, 9 S.W.3d at 814. We overrule issue two. Having overruled both of Chatman's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on September 4, 2018

10

Opinion Delivered October 10, 2018
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

11